JAMES W. TILLETT v. NORFOLK & WESTERN R. R. CO.
and LYNCHBURG & DURHAM R. R. CO.

*Negligence and Contributory Negligence— Witness, Opinion—New Trial on Part of a Case—Joint Liability of Lessor and Lessee Railroads—Negligence of Brakemen—Decrepit Passengers—Passengers Defined.*

1  What is negligence is a question of law, when the facts are undisputed. But where the facts are controverted, or more than one inference can be properly drawn from them, it is the province of the jury to pass upon an issue involving it. A mixed question of law and fact is then presented, to be answered by the jury under appropriate instructions from the judge as to whether negligence did or not exist under the various phases in which the facts are presented in the testimony. The same rule applies to contributory negligence.

2.  A witness will not be permitted to give his opinion as to whether negligence existed or not, or whether a thing was done in a negligent manner, as that would be to invade the province of the jury.

3.  In a proper case the Supreme Court will grant a *venire de novo* upon certain issues, leaving the verdict as to others undisturbed, and when that course is taken no evidence bearing exclusively upon the issue left undisturbed should be admitted in the lower court.

4.  The lessor and lessee of a railroad are both liable for the negligence of the lessee to the extent determined by this Court in *Logan v. Railroad*, 116 N. C., 940.

5.  If the brakeman on a railroad fail to apply the brakes when he has reasonable ground to apprehend that injury would result from such omission, he is clearly culpable, and the railroad company answerable for any injury resulting from such negligence.

6.  A sudden, violent, unexpected and unnecessary movement of a passenger car while passengers are getting on it at a proper time and place is negligence *per se.*

7. A passenger has a right to presume that the servants of the carrier will properly discharge their duties. Consequently, one who enters a railroad passenger car is not guilty of contributory negligence because he fails to rush into the first seat he reaches, although he knows the train is about to be coupled.

8. Persons who are old and decrepit are not more culpable for failing to provide against the carelessness of a carrier's servants than those who are vigorous and active.

9. It is not contributory negligence *per se* for a decrepit or infirm passenger to carry small bundles under his arms when boarding a train, or to fail to ascertain that the train is about to be coupled, or to stand up in the car until a child under his care can pass him in the aisle.

10. One who gets aboard a car, for the purpose of becoming a passenger, is entitled to the rights of a passenger, and the carrier is liable to him as such, whether he pays his fare before or after an accident by which he is injured.

CIVIL ACTION, tried before his Honor, *Judge Starbuck*, at the November Term, 1895, of the Superior Court of PERSON County, upon the issues directed by the Supreme Court in this case, as will appear from the record, and the opinion of the Court reported in 115 N. C. Report, page 662, and in 116 N. C., page 937.

After the jury was empanelled, the defendant's counsel tendered the following issues:

" 3. Was the plaintiff rightfully on the train of the defendant, the Norfolk & Western Railroad Company?

" 4. Was the plaintiff injured by the negligence of the said defendant, the Norfolk & Western Railroad Company?

" 5. Did the plaintiff, by his own negligence, contribute to his own injury?

" 6. If so, was the plaintiff's negligence the proximate cause of the injury?

" 7. Was the injury complained of the cause of the

plaintiff's alleged blindness and incapacity to conduct his business?

" 8. Was the plaintiff injured in the manner described and alleged in the complaint?"

His Honor refused to submit these issues, except as they are embraced in those submitted, and the defendant's counsel excepted to the refusal of the court to submit the issues as tendered by him. Thereupon the court, upon examination of the opinion of the Supreme Court in this case, and the pleadings therein, submitted the following issues:

" 2½. Was the plaintiff rightfully on the train of the defendant, the Norfolk & Western Railroad Company?

" 3. Was the plaintiff injured by the negligence of the Norfolk & Western Railroad Company?

" 4. Did the plaintiff, by his own negligence, contribute to his injury?"

The defendant's counsel excepted to these issues as submitted by the court.

There was a great deal of testimony introduced by both parties, the bearing and substance of which may be gathered from the charge of the presiding judge and the opinion of Associate Justice AVERY.

Numerous special instructions were asked for, some of which were given, and others refused, defendant duly excepting to such refusal.

The court charged the jury that the burden was on the plaintiff, on the issue No. 2½, to satisfy the jury by a preponderance of evidence, that the plaintiff was rightfully on the train, and if not so satisfied, they should answer the issue " No."

That if they answered that issue " No," it was an end of the case, and they should answer the other issues in favor of the defendants.

If they answered it "Yes," they should consider the issue No. 3, as to the alleged negligence of defendant, that the burden was on plaintiff to satisfy them, by a preponderance of evidence, that the plaintiff was injured by the negligence of the defendant. If not so satisfied, they should answer it "No."

If they answered "No," they should not consider issue No. 4.

If "Yes," they should consider issue No. 4, as to the alleged contributory negligence of plaintiff, that the burden was on the defendant on issue No. 4 to satisfy the jury by a preponderance of the evidence, that plaintiff, by his own negligence, contributed to his own injury.

The court further charged the jury on issue No. 2½ as follows:

"If the plaintiff went aboard the train to travel to Mt. Tirzah, intending to pay his fare and having the money to do so, and the train was standing at the usual place for receiving passengers, and he was not directed not to get on, he was rightfully on the train, and you will answer the issue 'Yes.'

"If the train was not at the usual place for receiving passengers, it was his duty to wait till it pulled up to the usual place, and if he got aboard before the car reached the usual place, he was not rightfully aboard the train, and you will answer the issue 'No.'

"If he was directed to wait till it pulled up, and he did not do so, then he was not rightfully on the train, and you will answer the issue 'No.'"

Defendants excepted to this part of his Honor's charge as not being a proper application of the law to the facts, and as misleading to the jury as to what is required to determine the word "rightfully" in the issue.

"The usual place for boarding a train is any place where

passengers were accustomed and allowed to get on the train, to the knowledge of the railroad company, and it makes no difference whether it was in front of the depot or not."

Defendants excepted to this part of his Honor's charge.

"Even if the car was standing at the usual place for receiving passengers, the plaintiff was not rightfully on the car if he was directed by the conductor, Walker, not to get on, or to wait until the car was pulled up in front of the depot.

"It was not necessary that the direction not to get on, or to wait until the train pulled up, be given in the shape of a positive command; if, in response to a question by Tillett, the conductor said, ' we will pull up to the depot for you,' and that was all that passed between them, still, if the tone or manner in which the statement was made was such as to reasonably give the plaintiff to understand that he was directed or expected to wait till the train was pulled up, then you will answer the issue ' No.'

"But if the statement was made by the conductor as simple information in response to a question, and was not intended as a direction or requirement, then no duty was imposed by such statement on the plaintiff to wait for the train to pull up."

To this part of the charge the defendants excepted.

Here his Honor fully arrayed the facts contended for by the parties arising upon the evidence, and supporting their contentions on this issue.

The court charged the jury as follows on issue No. 3:

"It is impossible to operate a mixed or freight train so as to secure the comfort and safety of the passengers to that high degree of assurance that is required in the operation of passenger trains; jerking and bumping is inevitable in the management of such trains. Railroads are not required

to furnish passengers on such trains with the conveniences and safeguards against danger that are required on passenger trains. It is the duty of the railroad company, in the operation and management of these mixed trains, to exercise all reasonable care, and take every reasonable precaution against injury to its passengers, which the appliances for that mode of conveyance, and used by the defendant on this train, would admit of. There is no evidence that the defendant did not have on this train the appliances ordinarily used for mixed trains, and it must therefore be taken that the train was so equipped.

"If it failed in this duty of reasonable care it was negligent, and if this negligence was the proximate cause of the plaintiff's injury, you should answer the 3d issue 'Yes.' A proximate cause of an injury is doing or omitting to do something, which act or omission a man of ordinary prudence, under the circumstances, could foresee might probably or naturally result in the injury complained of. This is the first requisite to make the negligent act or omission a proximate cause. The second requisite is that act. or omission produced or concurred in producing the injury complained of. It must have been such an act or omission that but for the injury would not have occurred."

The defendants excepted to this part of his Honor's charge.

"As to whether a certain state of facts amounts to negligence is a question of law for the court. Whether the state of facts exists, if not admitted, is a question for the jury to decide. I shall therefore instruct you as to whether certain phases of the facts that you may find from the evidence, on this and on the issue of contributory negligence, do or do not constitute negligence, it being for you to say whether or not these facts existed. If you find that, in making or attempting to make the coupling, the

employees of the railroad company in charge of the train, through failure to apply the brakes soon enough, ran the forward part of the train back against the stationary part, in which was a passenger car, with so great a shock as to throw the passengers sitting down violently against the front seat, and to knock the car back along the track ten or fifteen feet, the defendant in so doing was guilty of negligence, and if, in consequence of the shock, the plaintiff was thrown to the floor so violently as to cause physical injury and suffering, you will answer the 3d issue ' Yes.' "

The defendants excepted to this part of his Honor's charge.

" If you believe the facts to be as stated by the witnesses for the defendant, the defendant was not negligent.

" If the train was backed at the rate of a slow walk to. where the coupling was made, then it was a coupling usual and incident in the management of such a train, and you will answer the 3d issue ' No,' and even if you should find that the shock of the coupling was of more than usual severity, yet was one that ordinarily occurs in the management of such trains, and the train men used every reasonable precaution in applying the brakes ; that they applied them as soon and as hard as they reasonably believed would prevent injury to the passengers, then you should answer the 3d issue ' No.' Here the court arrayed the evidence relied on by the parties to support of their contentions on issue No. 3."

The court charged as follows on issue No. 4 :

" We have now considered the duty which the railroad company owes to the passengers. There is another duty for you to consider. Upon the passenger is imposed the. duty of giving reasonable care and attention to his own safety. If he fails in this duty he is negligent, and if this negligence is a proximate cause of the injury producing or·

concurring with the negligence of the railroad company in producing the injury, then the passenger is said to be guilty of contributory negligence.

" The plaintiff admits that he was afflicted with rheumatism so as to impair his power of locomotion. It was therefore necessary for him, and the law required of him, that he exercise a higher degree of care in getting on and entering the car than should have been ordinarily and reasonably exercised by a man who possessed the ordinary power of locomotion. He had the right to travel on the defendant's car, but the extra risk in traveling, caused by his infirmities, was assumed by himself, and for that reason he must look to his own safety with a corresponding amount of vigilance. Not only was he held to extra care by reason of his infirmity, but also on account of the increased risk incidental to traveling on freight train. He assumed the extra risk and discomfort usual and incident to such mode of travel. An act on his part which may not have been negligence if he was entering a passenger car, might be negligence if he was entering a mixed train. The evidence shows that he knew it was a freight train, and that it was shifting. When he went to get aboard, it was incumbent on him to display all the caution that the circumstances demanded. If the plaintiff delayed going to the train until, by going straight to his seat, he did not have time to get seated, and he saw the passenger car, standing alone or with other cars, was detached from the rest of the train, and he made no effort to ascertain the position of the shifting part of the train, and if he had looked up the track he could have seen the shifting part approaching at such a rate of speed as to make it likely there would be a jar before he reached his seat, then he was guilty of contributory negligence ; or if he did see the shifting part approaching at such a rate of speed and dis-

tance as to make a jar likely, but disregarded it and entered the car, that would be contributory negligence, and you will answer the issue ' Yes.'

" If the train was at the usual place for receiving passengers, and the plaintiff was not told that it would pull up in front of the station, and if he looked up the track when ten steps from the front end of the passenger car, and could see the shifting part of the train, and then proceeded directly to the rear end of the car and got on, he was not negligent up to that time, and if he was not negligent after entering the car, and was not intoxicated, then he was not negligent, and you will answer the 4th issue ' No.' "

The defendants excepted to this part of his Honor's charge—the last sentence.

" The plaintiff was required to find a seat with all reasonable dispatch, but it was not necessary for him, if he entered the car rightfully, to take the first seat he got to, and his failure to do so was not negligence. He had the right to select such seat as suited him, but under the circumstances it was his duty to make the selection promptly, but the law required nothing unreasonable or unnatural. The bare failure to drop into the seat he selected as soon as he got to it would not be negligence. If he was standing, waiting at the seat, without any reason, or good reason, for so doing, as, for example, if, when he got to the seat, he was standing up, and turned around to survey the car, that he might gratify his curiosity, then he was negligent, and if that negligence contributed to his injury, that is, if the injury would not have happened but for such negligence on his part, you will answer the 4th issue ' Yes.'

" If, however, he went to the seat he selected, with his little son behind him, and then stopped and turned to let

his son pass in before him, he was not guilty of negligence, and, unless he was negligent in other respects, you will answer the 4th issue 'No.'"

The defendants excepted to this portion of his Honor's charge.

"Intoxication is not of itself negligence. To be negligence, it must have been one of the proximate causes concurring to produce injury. If you believe that the shock was so violent that it would have thrown the plaintiff to the floor any way, and caused the injury complained of, even if he had not taken a drink, then his drinking, even if he was drunk, was not such negligence as would be a proximate cause of the injury, and you will answer the 4th issue 'No,' but if he would not have been thrown down and received the injury he complained of, if it had not been for the fact that he had been drinking, then his drinking was negligence, for otherwise the injury would not have occurred, and you will answer the 4th issue 'Yes.'"

The court fully arrayed the evidence relied upon by the parties in supporting their contentions on the issue No. 4. There was a verdict in favor of the plaintiff.

The jury answering "Yes" to issue No. 2½, "Yes" to issue No. 3, and "No" to issue No. 4, both defendants moved for a new trial for errors assigned in refusing to charge the jury as specially requested by both of the defendants, and for giving special instructions asked for by the plaintiff, and for errors in judge's charge given by the court, and for excluding evidence offered by the defendants and excluded by the court, and excepted to on the trial, and for exceptions to issues noted on the trial.

Motion for a new trial was overruled, and the defendants excepted.

The Lynchburg & Durham Railroad Company moved for judgment *non obstante veredicto.*

Motion overruled. The defendant, the Lynchburg & Durham Railroad Company, excepted.

Judgment in favor of plaintiff for $9,000, interest and cost, to which the defendants excepted and appealed.

*Messrs. R. O. Burton, Jones & Tillett* and *W. W. Kitchen,* for plaintiff.

*W. A. Guthrie,* for defendants (appellants).

AVERY, J.: There was no error in refusing to submit the issues tendered by the defendant. Those framed by the court involved the only questions left open for trial. *Tillett* v. *Railroad,* 115 N. C., 662. In the exercise of a sound discretion the court was at liberty to allow the jury to pass upon the specific question whether the plaintiff was rightfully on the car, but the right of the plaintiff to board the car must have been proven necessarily in order to make out a *prima facie* case of negligence on the part of the defendant, and thus all of the controversy still left open might have been determined by means of the two issues involving the alleged negligence of the defendant and contributory negligence on the part of the plaintiff. What is negligence is a question of law, when the facts are undisputed. But where the facts are controverted, or more than one inference can be drawn from them, it is the province of the jury to pass upon an issue involving it. *Deans* v. *Railroad,* 107 N. C., 686. A mixed question is then presented, and it becomes the duty of the judge, at the request of counsel, to tell the jury how to apply the law of negligence to the various phases of the testimony, and the office of the jury to make the application of the law, as given by the court, to the facts as found by them.

118—66

They determine in this way, by their responses to the issues, whether negligence or contributory negligence has been shown. When, therefore, the witness was asked to state whether a car was coupled in a negligent manner, the question was calculated to elicit an opinion upon one of the very questions which the jury were impaneled to decide, and the objection to its competency being made in apt time was properly sustained. *Smith* v. *Smith*, 117 N. C., 326; *Wolf* v. *Arthur*, 112 N. C., 691.

There is no merit in the exception to the refusal of the court by means of an additional issue to re-open the question of damages, which was finally settled and determined when this court granted a new trial limited virtually to two issues. It is needless, therefore, to discuss the point presented by counsel on the argument. It was not error to refuse to allow defendant to show in diminution of damages already ascertained by a verdict that the permanent injury to plaintiff's eye-sight was due to his failure to have them properly treated after the accident. Such questions could only be considered by the jury in arriving at the *quantum* of damage. The court considered on the former hearing all of the questions then presented, and determined to settle all of them except those specifically mentioned, as they are empowered to do under the recent statute, by a *per curiam* judgment. The Court would have settled the whole case by such judgment had a new trial been refused upon every issue, and its ruling would have concluded the defendants upon all points. Although the judgment left certain questions open for another trial to the extent that the verdict was undisturbed, it was final—not subject to be set aside by any subsequent action of the court or jury. We must assume, if we had no actual knowledge of the matter, that the defendant had opportunity on a former trial to present to the jury the views of its counsel upon

TILLETT *v.* RAILROAD.

the question of permanent injury, and that this Court, upon reviewing the case on appeal determined that as to that matter it had no reason to complain. The plaintiff filed a petition to rehear, and at his instance the *per curiam* was modified. The defendant rested on its oars, and, having done so, is not entitled to the benefit of a rehearing on another appeal upon questions that are behind us. The defendant's counsel objected to the introduction of the deposition of Dr. Graham, a specialist, in which he gave his opinion as an expert that the loss of eye-sight had been caused by the injury to the plaintiff's head, sustained by reason of his falling in the car ; and plaintiff's counsel thereupon withdrew it, presumably upon the theory that it was conceded to be irrelevant as to any question before the jury.

The question whether the lessor railway company is answerable jointly with the lessee Company operating its road for the injuries due to the negligence of the latter, and if so, what was the extent of such liability, arose in *Logan* v. *Railroad*, 116 N. C., 940. It was in this Court then *res nova*, but the Court, after giving the matter involved the careful consideration which it deserved, and upon a full discussion of the law, delivered an opinion which is decisive of the right to recover against the lessor in this case. We find in the argument on behalf of the defendant no reason for receding from the position then taken. In view of the conflict of authority in other states, this Court was left free to be guided rather by the weight of reason than by the number of precedents in reaching a conclusion. If, as already stated, it was the province of the court to determine whether any given act was evidence of a want of ordinary care, and if the loss of control over a train by engineer and brakeman, and consequent injury to a passenger, was due to a failure to apply

brakes in time, and was properly held by the court to be negligence, it would have been superfluous to add the word "negligent" as qualifying "failure" and it was not an error *to* omit it. If the brakeman failed *to* discharge such a duty when he had reasonable ground to apprehend that injury would result from such omission, he was clearly culpable, and the defendant companies were answerable for any injury resulting from such negligence. *Blue* v. *Railroad*, 116 N. C., 955. Where the injury is due to the negligent omission of duty by a brakeman, it is not a mere accident, and the objection to the charge that it made no allowance for accident, is not well taken. "A sudden, violent, unexpected and unnecessary movement of a passenger car while passengers are getting on it at a proper time and place is negligence," because those who permit such things to be done when they have power to prevent it by using proper precaution, and have reason to apprehend that passengers may be injured thereby, fail to exercise the care which the law demands as a duty of every carrier company that contracts for the safe carriage of passengers. It is manifestly a want of ordinary care to fail to apply brakes to a moving train, when the discharge of so simple a duty will avert all danger to passengers, that might result from a collision of cars, and the omission to perform it may subject them to peril. If the injury which the plaintiff sustained might have been averted by applying the brakes, and was a natural and probable consequence of the omission to do so, the law imputes it to the carelessness of the Company whose servant neglected to perform that duty (Pollock on Torts, star page, 463,) and holds the lessor company answerable to the same extent as though the lease had never been made. The jury must have found, under the instructions of the court, that the injury was due to a violent, unnecessary and unexpected collision caused by

the failure to apply the brakes. It was the duty of the plaintiff to provide by proper care against such shock as was the natural and probable consequence of coupling the cars with care, but the law did not require him to rush into the very first seat he reached, instead of one a little further back on the opposite side, even though he knew that the train was about to be coupled, nor did it hold him culpable for failing to see that the coupling was about to be effected, when he might have seen it by looking up the road as he embarked on the train. He had a right to assume, and to act on the assumption, that the servants of the Company would discharge their duty. *Russell* v. *Monroe*, 116 N. C., 720. Although he had rheumatism in his lower limbs, he was not negligent in holding with one hand by the back of the seat which he selected, till his little child, nine years old, could pass ahead of him, for fear that the unusually rapid running of the engineer or the failure to apply brakes would cause an unnecessarily violent shock. Persons who are old or decrepit are not more culpable for failure to provide against the carelessness of those whose duty it is to provide for their safety than those who are vigorous and active. All alike may act on the assumption that the servants of a railroad company, whose occupation binds them to a high degree of diligence, will exercise at least ordinary care in looking after the safety of those whom the law places under their protection. It was not error to refuse to instruct the jury that the plaintiff was negligent in carrying in his arms or under his arms two bundles, one of which was, according to the description of a witness, about as large as a hat, and another a little smaller. Though there was conflicting evidence from some of defendant's witnesses, there was abundant testimony, if believed, to warrant the jury in finding that the cars came against each other violently—with such force as to cause a crash

and to send the passenger car half way across the street, or ten or fifteen feet. There was testimony tending to show that an old negro man, who was sitting on a seat, with his hands resting on the back of the seat in front of him, was thrown by the collision against the front seat in such a way as to make his nose bleed. Though the testimony was conflicting, the jury must have believed that the servants of the Company failed to control the train and carelessly, because unnecessarily, permitted the cars to come together with unusual and unexpected violence. Under such circumstances, railroad companies cannot escape responsibility by showing that an infirm person failed to settle down in the first seat reached, or encumbered himself with bundles or the care of children so as to impede his movements.

Whether the plaintiff bought his ticket before or after the accident, it is not denied that he got upon the car for the purpose of taking passage on it, and that he did pay his fare subsequently. He was therefore, in any aspect of the evidence, a passenger. See authorities cited in *Daniel* v. *Railroad*, 117 N. C., 592. The plaintiff boarded the train while other passengers were getting on, and at a place where the company was accustomed to receive them, and had a right to receive them. *Browne* v. *Railroad*, 108 N. C., 34. There was no complaint that the question whether the plaintiff was warned to wait till the car should be drawn up in front of the station, was not properly left to the jury on the last trial. A careful review of the whole statement shows that there was no error, and the judgment is therefore affirmed.

Affirmed.