GEORGE S. PAPADOPOULOS, Plaintiff v. STATE CAPITAL INSURANCE COMPANY AND NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Defendants

No. COA06-455

(Filed 15 May 2007)

**1. Insurance— house destroyed by fire—issue of fact as to origin—summary judgment, directed verdict properly denied**

There was a genuine issue of material fact about the origin of a fire which destroyed a house, and summary judgment and a directed verdict for defendant insurer were properly denied in a contested insurance claim.

**2. Insurance— house destroyed by fire—vandalism exclusion—issue of fact as to origin of fire—summary judgment, directed verdict inappropriate**

Summary judgment and directed verdict for defendant insurer were properly denied in an insurance claim in which de-

fendant argued that an exclusion for vandalism and malicious mischief applied. There was no conclusive evidence as to the origins of the fire; no appellate opinion was issued on whether arson constitutes vandalism under exclusionary clauses.

**3. Insurance— house destroyed by fire—exclusion for neglect—issue of fact**

There was a question of fact, so that summary judgment and a directed verdict for defendant insurer were properly denied, in an insurance claim arising from the burning of a house where defendant contended that the policy excluded coverage for neglect.

**4. Insurance— house destroyed by fire—exclusion of inadequate or faulty maintenance—condemnation—issue of fact**

Summary judgment and a directed verdict for defendant insurer were properly denied in an action on an insurance policy for a house destroyed by fire. Defendant insurer contended that an exclusion for insufficient maintenance applied, relying on an admission that the house had been condemned. Regardless of the truth of the admission, it was a question for the jury.

**5. Insurance— house destroyed by fire—damages—directed verdict denied**

The proper measure of damages was a question for the jury in an insurance case arising from the burning of a house following incidents of vandalism, and a directed verdict for defendant insurer was properly denied.

**6. Insurance— house destroyed by fire—value—opinion of manager**

The trial court did not err in an action on an insurance policy for a house destroyed by fire by allowing an opinion on the value of a house from the realtor who was the rental manager. Testimony about the value prior to a series of vandalism incidents before the fire, coupled with estimates of the cost of repair, was clearly relevant. Any inconsistency goes to credibility and is appropriate for cross-examination, but does not bear on admissibility.

**7. Evidence— testimony contradicting admission—supplemental response to admission**

The trial court did not err by admitting evidence that contradicted an admission by plaintiff where a supplemental response to the request for admissions had been filed fifteen minutes after

the original. The court allowed defendant to raise the issue to the jury and instructed on the admission.

**8. Appeal and Error— preservation of issues—instructions as given—requested instructions incorrect—failure to object**

The issue of the instructions as given was not properly preserved for appeal where defendant did not object. The court did not err by not giving defendant's requested instructions because they did not represent a correct statement of the law.

**9. Insurance— prejudgment interest—North Carolina Insurance Guaranty Association**

The identity of the North Carolina Insurance Guaranty Association as a statutory creation relieves it of liability for prejudgment interest.

Appeal by defendants from order entered 7 April 2005 by Judge James F. Ammons, Jr., and judgment and order entered 10 October 2005 by Judge Jack A. Thompson in Lee County Superior Court. Cross-Appeal by plaintiff from judgment entered 10 October 2005 by Judge Jack A. Thompson in Lee County Superior Court. Heard in the Court of Appeals 13 December 2006.

*G. Hugh Moore, for plaintiff.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by James F. Wood, III; and Nelson Mullins Riley & Scarborough, LLP, by Christopher J. Blake, Joseph W. Eason, and Leslie Lane Mize, for defendants.*

ELMORE, Judge.

George S. Papadopoulos (plaintiff) brought a breach of contract action against State Capital Insurance Company (State Capital). While the action was pending, an order of liquidation with a finding of insolvency was entered against State Capital; the North Carolina Insurance Guaranty Association (the NCIGA) was substituted as defendant in the action with the consent of all parties (State Capital and the NCIGA, collectively "defendant"). On 7 April 2005, Judge James F. Ammons, Jr. entered an order denying defendant's motion for summary judgment, and on 10 October 2005, following a jury trial, Judge Jack A. Thompson entered final judgment against defendant and denied defendant's motion for judgment notwithstanding the verdict. It is from these orders that defendant now appeals. Plaintiff

PAPADOPOULOS v. STATE CAPITAL INS. CO.

[183 N.C. App. 258 (2007)]

cross-appeals from the judgment entered 10 October 2005 by Judge Jack A. Thompson. After a thorough review of the record, we find no error.

Plaintiff owned a house in Sanford, North Carolina. In 1986, plaintiff moved to Massachusetts, hiring Wayne Spivey (Spivey), an experienced real estate broker, to manage the property as a rental. In August 2000, the property's tenants moved out. Shortly thereafter, Spivey discovered that the house had been vandalized. Spivey contacted plaintiff, the police, and the local agent of State Capital, which insured the property. A repairman was called and an estimate received; however, further vandalism, including a broken window, was discovered before the repairs could be accomplished. Spivey again contacted plaintiff, a repairman, and the police; plaintiff then contacted State Capital, which sent an adjuster to examine the house. Once again, before any repairs could be made, the house was vandalized, with burns and additional broken windows. Spivey yet again contacted the repairman, who told him that the repair cost would be an additional three or four hundred dollars. At this point, Connie Cockerham (Cockerham), an agent for State Capital, told Spivey not to bother getting yet another estimate from the repairman, but simply to have the work done.

After the vandalism of the house, plaintiff submitted a claim for $3,500.00; he was paid $2,700.00 by State Capital in satisfaction of that claim. As a result of the vandalism, the City of Sanford contacted plaintiff via its city code inspector, Carlton Anglin (Anglin). Anglin informed plaintiff of several violations, and placed a sign reading "Under Minimum Housing" on the house.[1] In addition, a hearing was scheduled for 20 November 2000. A fire destroyed the house before that hearing was held.

On 12 November 2000, the police called Spivey to the house after they discovered a smoldering blanket inside it. Later that night, Spivey was again called to the house; this time the entire house was ablazed, and it burned to the ground. Spivey contacted plaintiff. Plaintiff authorized Spivey to have the debris removed, and Spivey did so. The removal cost $4,000.00, and was performed with the consent of Cockerham, who told plaintiff that he should pay for it, but that it was covered under his insurance policy.

---

1. This sign is the topic of some dispute between the parties. It appears that the sign had two sides; the side of the sign already described and the other side, which read "Condemned."

Cockerham never indicated to plaintiff that there was a possibility the claim might be denied; to the contrary, she told him in January 2001 that she had calculated the value of the house to be $90,148.00, and that that amount, when combined with the cost of debris removal and loss of rent, would essentially max out his policy limits. Plaintiff contacted Cockerham to see if anything was required of him to finalize the claim. The first indication that he had that there was any coverage issue at all was when he was so informed by Cockerham on 20 March 2001. Surprised by this new information, plaintiff memorialized their conversation in a letter sent to Cockerham that day.[2] Plaintiff again spoke with Cockerham on 21 June 2001, at which point Cockerham informed plaintiff that although no final decision had been made, the company was leaning towards providing coverage. Approximately one week later, plaintiff heard from defendant's trial counsel. Upon State Capital's denial of his claim, plaintiff filed suit for breach of contract.

Defendant first contends that the trial court erred in denying its motion for summary judgment. This argument is essentially repeated in defendant's contention that the trial court committed reversible error in denying defendant's motions for directed verdict and judgment notwithstanding the verdict. Accordingly, we will address these contentions together.

"The standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Litvak v. Smith,* 180 N.C. App. 202, 205, 636 S.E.2d 327, 329 (2006) (quoting *Gattis v. Scotland Cty. Bd. of Educ.,* 173 N.C. App. 638, 639, 622 S.E.2d 630, 631 (2005)). "On appeal our standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to the jury." *Overton v. Purvis,* 162 N.C. App. 241, 244, 591 S.E.2d 18, 21 (2004) (quoting *Whitaker v. Akers,* 137 N.C. App. 274, 277, 527 S.E.2d 721, 724 (2000)) (internal quotations omitted). "When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence," and resolving "[a]ny conflicts and inconsistencies in the evidence . . . in

---

2. The letter was actually sent by plaintiff's son, a practicing attorney in West Virginia admitted to the North Carolina Bar, to whom plaintiff had granted power of attorney. Indeed, throughout the dealings between the parties, it seems that plaintiff's son represented plaintiff's interests.

favor of the non-moving party." *Jernigan v. Herring*, 179 N.C. App. 390, 392-93, 633 S.E.2d 874, 876-77 (2006) (citations omitted). Furthermore, the motion must be denied "[i]f there is more than a scintilla of evidence supporting each element of the non-moving party's claim. . . ." *Id.* at 392-93, 633 S.E.2d at 877.

Defendant relied on four separate grounds for summary judgment at trial. Specifically, defendant claimed (1) that plaintiff's house was not damaged by an "occurrence" as defined by the policy; (2) that the policy excluded coverage for vandalism and malicious mischief to vacant properties; (3) that the policy excluded coverage for loss due to plaintiff's neglect; and (4) that the policy excluded coverage for faulty, inadequate, or defective maintenance. Defendant essentially reiterates these claims on appeal.

[1] Defendant first claims that the insurance contract requires that the fire be caused by an "occurrence" as defined by the contract, and that in this case the fire was caused by arson. "Occurrence" is defined in the contract as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . 'property damage.' " Although defendant claims that "[t]he evidence was uncontroverted that [p]laintiff's house was destroyed by arson, which is an intentional act," nowhere does defendant provide examples of this evidence. Nor does defendant cite to pages in the transcript, or otherwise point the Court towards a source at which might verify its claim. In fact, plaintiff contradicts this claim, stating in his brief that "there is absolutely no evidence that the fire was intentionally set by plaintiff or anyone else." Moreover, the report prepared by defendant's investigator states that "[d]ue to the degree of destruction to the risk, a specific origin and cause of this fire could not be determined." It appears, therefore, that this is a genuine issue of material fact, which would preclude summary judgment. Likewise, because plaintiff, as the non-moving party, is entitled to resolution of any conflicts and inconsistencies in his favor, a directed verdict is also inappropriate.

[2] Defendant next argues that the policy excluded coverage for vandalism and malicious mischief to vacant buildings. Specifically, defendant points to that part of the policy that reads: "we do not insure . . . loss caused by . . . (f) vandalism or malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." Once again, the Court notes that there is no conclusive evidence as to the origins of the fire. As such, neither summary judgment nor a directed verdict is appro-

priate on this issue. We therefore decline to issue an opinion on whether arson constitutes vandalism for purposes of exclusionary clauses in this State.

Additionally, as plaintiff points out in his brief, the provision cited by defendant is located in a "Special Form" providing "Extended Coverage." While there is also a vacancy exclusion found in the main policy, it applies only to risks located in Protection Classes 9, 9S or 10; plaintiff's house was classified as Protection Class 4.

[3] Defendant next contends that the policy excluded coverage for loss due to plaintiff's neglect. Specifically, the contract reads:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> ***
>
> Neglect, meaning [the insured's] neglect to use all reasonable means to save and preserve property at and after the time of a loss.

Defendant argues that Spivey, as plaintiff's agent, failed to secure the house, have repairs made, or have the power turned on, thus increasing the risk of vandalism through his neglect. Again, this presents a question of fact, which was properly sent to the jury.

[4] Finally, defendant claims that the policy excluded coverage for faulty, inadequate, or defective maintenance. It relies on a judicial admission by plaintiff that the house had been condemned. Regardless of the truth of that admission, however, this is yet again a question for the jury, to which the trial court properly submitted it.

[5] Defendant presents one additional ground for its motion for directed verdict: it claims that plaintiff failed to present competent evidence of the proper measure of damages. Defendant concedes that evidence of the value of the property prior to the vandalism was provided, and does not argue that the estimates given for the repair work were incorrect. Given that information, the proper measure of damages remained a jury question. Accordingly, this assignment of error is without merit.

[6] Defendant's next main contention is that the trial court erred in allowing Spivey to offer opinion evidence on the value of the house. Defendant first argues that because the proper measure of damages

PAPADOPOULOS v. STATE CAPITAL INS. CO.

[183 N.C. App. 258 (2007)]

is the difference between the fair market value of the house immediately before and immediately after the fire, evidence of Spivey's opinion on the value of the house prior to the vandalism is irrelevant. We disagree. Testimony as to value prior to the vandalism, when coupled with estimates of the cost of repairing the damage, which were also entered into evidence, is clearly relevant to the case. Defendant also argues that the prejudicial impact of the admission of the testimony outweighs any probative value. Again, we disagree. The question clearly asked for the value prior to the vandalism, and defendant was free to cross-examine. Furthermore, defendant's contention that the witness gave an inconsistent response in his prior deposition is simply beside the point. This goes to the witness's credibility, and while it would be appropriate for defendant to impeach the witness on cross-examination, it does not bear on the admissibility of the statement. This assignment of error is without merit.

[7] Defendant next contends that the trial court erred in admitting testimony that contradicted an admission by plaintiff. Specifically, plaintiff admitted that the house had been condemned prior to the fire in his response to defendant's request for admissions. However, as defendant concedes in its brief, plaintiff filed a supplemental response a mere fifteen minutes after his original admission.[3] Defendant relies on Rule 36 of the North Carolina Rules of Civil Procedure, which states in pertinent part:

> *Effect of admission.*—Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

N.C. Gen. Stat. § 1A-1, Rule 36(b) (2005).

Plaintiff sought to supplement his response under Rule 26(e), which addresses supplementation of responses to requests for discovery. Specifically, plaintiff relied upon Rule 26(e), which states in

---

3. Defendant asserts that plaintiff never amended his admission concerning the placement of a "CONDEMNED" sign on the property. The Court recognizes from the record that there is no dispute between the parties as to the placement of that sign; plaintiff merely states that the sign was two-sided.

PAPADOPOULOS v. STATE CAPITAL INS. CO.

[183 N.C. App. 258 (2007)]

pertinent part: "A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (i) he knows that the response was incorrect when made . . . ." N.C. Gen. Stat. § 1A-1, Rule 26(e)(2) (2005).

"Although a specific statute controls over a general statute if the two cannot be reconciled . . . the Rules of Civil Procedure must be interpreted as a whole." *Clark v. Visiting Health Prof'ls, Inc.*, 136 N.C. App. 505, 508, 524 S.E.2d 605, 607 (2000) (citations omitted). In this case, where it is clear that the admission was incorrect, and plaintiff attempted to supplement his response, the trial judge's allowance of the testimony was not error. Moreover, even if it had been, defendant's assertion that it was prejudiced by the allowance is disingenuous given its concession that it received the correction a mere fifteen minutes after the admission was made. The trial court allowed defendant to raise the issue of the admission to the jury, and even instructed the jury on the admission. Accordingly, this assignment of error must fail.

**[8]** Finally, defendant assigns as error the trial court's instructions to the jury, as well as the trial court's refusal to submit its requested instructions to the jury. We first note that the issue of the instructions as given was not properly preserved for appeal. "A party may not assign as error any portion of the jury charge . . . unless he objects thereto . . . ." N.C.R. App. P. 10(b)(2) (2007). Here, defendant stated to the trial court that its "only objection would be the [trial court's] ruling that it will not give the request for instructions that was filed by the defendant prior to the call of the case." Defendant therefore waived the issue of the instructions as given. *See, e.g., Alford v. Lowery*, 154 N.C. App. 486, 490, 573 S.E.2d 543, 546 (2002) (holding that a party's argument concerning a jury instruction "was waived by [the party] because the issue was not properly preserved for appellate review" under N.C.R. App. P. 10(b)(2)).

"When a party requests a jury instruction, the trial court is obligated to so instruct if the instruction is a correct statement of the law and the evidence supports it." *Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 823, 561 S.E.2d 578, 582 (2002) (citation omitted). Having reviewed defendant's requested instructions, we hold that they did not represent a correct statement of the law. As such, the trial court did not err in its refusal to submit the requested instructions to the jury.

**[9]** On cross-appeal, plaintiff assigns as error the trial court's refusal to grant him prejudgment interest. This Court has previously held that "the identity of the [NCIGA] as a statutory creation . . . relieves it from liability for prejudgment interest." *City of Greensboro v. Reserve Insurance Co.*, 70 N.C. App. 651, 664, 321 S.E.2d 232, 240 (1984). Accordingly, having performed a thorough review of both the appeal and cross-appeal, we find no error in the underlying action.

No error.

Judges McGEE and BRYANT concur.