IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-641

Filed: 17 March 2020

Durham County, No. 16 CVS 3056

JULIE BERKE, Plaintiff,

v.

FIDELITY BROKERAGE SERVICES, the ESTATE OF GARY IAN LAW, and AMAN MASOOMI, Individually and as Sole Heir and Executor of the ESTATE OF SHARON LEE DAY, Defendants.

Appeal by Plaintiff from judgment entered 10 October 2018 by Judge Carolyn J. Thompson in Durham County Superior Court. Heard in the Court of Appeals 4 December 2019.

> *Tillman, Whichard & Cagle, PLLC, by Willis P. Whichard and Sarah Elizabeth Tillman, for the Plaintiff-Appellant.*
>
> *Roberti, Wicker, Lauffer & Cinski, P.A., by R. David Wicker, Jr., for the Defendant-Appellees.*

BROOK, Judge.

Julie Berke ("Plaintiff") appeals from judgment entered upon a jury verdict finding that the estate of Gary Law, her former husband, is the beneficiary of certain retirement accounts. We hold that the trial court erred by submitting this issue to the jury because there was insufficient evidence that anyone other than Plaintiff was the beneficiary of these accounts at the time of Mr. Law's death. It was therefore error to deny Plaintiff's motion for directed verdict on this issue and her motion for

judgment notwithstanding the verdict.  Accordingly, we reverse the trial court's judgment and award of costs.

## I. Background

Plaintiff was married to Mr. Law on 24 May 1992.  The couple separated on 25 January 2014, entered a Separation and Property Settlement Agreement ("the Separation Agreement") on 12 February 2015, and then divorced on 9 April 2015.  Mr. Law died on 17 September 2015 and his sister and sole heir, Sharon Day, died on 2 December 2015.  When Mr. Law died, he owned three retirement accounts in the custody of Fidelity Brokerage Services LLC ("Fidelity").

On 6 May 2016, Plaintiff initiated an action for a declaratory judgment that she was the beneficiary of Mr. Law's retirement accounts at Fidelity at the time of his death.  In a 2 October 2017 answer, Mr. Law's estate admitted that the Separation Agreement entered into by Plaintiff and Mr. Law expressly provided that there was no release of property and estate rights with respect to any beneficiary designations existing at the time of the execution of the Agreement or made thereafter; that Mr. Law never made any changes to the beneficiary designations for his Fidelity accounts after the execution of the Agreement; and that Plaintiff therefore remained the beneficiary of Mr. Law's accounts at Fidelity ending in numbers 4418, 1424, and 2628 at the time of his death.  Mr. Law's estate thus conceded in its 2 October 2017 answer

that Plaintiff was entitled to a declaratory judgment that she was the beneficiary of the Fidelity accounts at the time of Mr. Law's death.

The executor and sole heir of Mr. Law's sister, however, did not so concede. In answers filed on 23 June 2016, 27 October 2017, and 3 November 2017, the executor and sole heir of Ms. Day, Aman Masoomi, disputed whether Plaintiff was entitled to the assets in the Fidelity accounts in both his personal capacity and as Ms. Day's executor. If the accounts had no beneficiary at the time of Mr. Law's death, Mr. Masoomi had an interest in the accounts: (1) he was Ms. Day's sole heir; (2) Ms. Day was Mr. Law's sole heir; and (3) Ms. Day and Mr. Law had both since passed away.

In an order entered 3 April 2018 denying Plaintiff's partial motion for summary judgment on the issue of whether she was the beneficiary of the accounts, the trial court determined that there was a genuine issue of material fact as to whether Mr. Masoomi had an interest in the accounts. Before the court at this summary judgment hearing were documents that purported to be letters from Mr. Law and Ms. Day to Fidelity. Each of these letters purportedly pre-dated the death of the respective decedent, and each appeared to attempt to change the beneficiary designations of Mr. Law's retirement accounts.[1]

---

[1] Mr. Masoomi testified at deposition that he wrote the purported letter from Mr. Law at Mr. Law's request, took Mr. Law to get the document notarized, and recalled observing Mr. Law put the document in an envelope after it was notarized. Mr. Masoomi testified further that although he never witnessed Mr. Law put the letter in mail, he did supply Mr. Law with a stamp for the envelope.

However, ruling on a motion in limine in August 2018, the court determined that there was a genuine issue as to the authenticity of these documents. And, before trial began, the parties stipulated that (1) "Fidelity ha[d] not been able to locate any records in its custody and control that indicate that Fidelity received any written changes, modifications, or revocations from Gary Ian Law to the beneficiary designation for account #1424, #4418 prior to September 17, 2015"; and (2) "[o]n September 15, 2015, Julie L. Berke-Law was listed in Fidelity's records as the designated beneficiary of Gary Ian Law's account #4418, #1424, and #2628." In granting Plaintiff's motion and excluding the letters from the jury's consideration, the trial court found not only that there was a genuine issue as to the authenticity of the documents, but also that, based on the parties' pretrial stipulations regarding the absence of any record communications changing the beneficiary designations for the accounts and receipt of the same by Fidelity, "the probative value of the letters [was] outweighed by the unfair prejudice they would offer to the jury."

The case came on for trial before the Honorable Carolyn J. Thompson in Durham County Superior Court on 10 September 2018. Judge Thompson presided over a six-day trial. At the close of the evidence, Plaintiff moved for a directed verdict on the issue of whether she was the beneficiary of the retirement accounts, which the trial court denied. On 21 September 2018, the jury returned a verdict in favor of Mr. Masoomi, finding in relevant part that Mr. Law's estate was the beneficiary of the

accounts, not Plaintiff. Plaintiff moved for judgment notwithstanding the verdict, which the trial court denied. The trial court entered a judgment upon the verdict on 10 October 2018.

Plaintiff entered timely written notice of appeal on 18 October 2018.

## II. Analysis

The dispositive issue in this appeal is whether the trial court erred in concluding that there was sufficient evidence that someone other than Plaintiff was the beneficiary of Mr. Law's retirement accounts when it submitted this question to the jury, denying Plaintiff's motion for directed verdict.[2] Viewing the evidence in the light most favorable to Mr. Masoomi, as we are required to do, we hold that the admissible, record evidence at the time Plaintiff moved for a directed verdict was insufficient to support a finding by the jury that anyone other than Plaintiff was the beneficiary of the accounts. The trial court therefore erred in denying Plaintiff's motion for directed verdict on this issue and motion for judgment notwithstanding the verdict after the jury returned a verdict in favor of Mr. Masoomi.

"Under Rule 50 of the North Carolina Rules of Civil Procedure, a party may move for a directed verdict at the close of the evidence offered by the opponent and at the close of all of the evidence." *Buckner v. TigerSwan, Inc.*, 244 N.C. App. 385, 390,

---

[2] In her appellate brief, Plaintiff does not argue that the trial court erred in denying her partial motion for summary judgment, abandoning this issue. *See* N.C. R. App. P. 28 ("Issues not presented and discussed in a party's brief are deemed abandoned.").

781 S.E.2d 494, 498 (2015). The motion is "only [] proper in a jury trial." *Id.* (citation omitted). It "tests the sufficiency of the evidence to go to the jury and to support a verdict for the non-moving party." *McMahan v. Bumgarner*, 119 N.C. App. 235, 237, 457 S.E.2d 762, 763 (1995) (citation omitted). Thus, "[a] motion for a directed verdict presents the same question for both trial and appellate courts: Whether the evidence, taken in the light most favorable to the nonmovant, is sufficient for submission to the jury." *Smith v. Moody*, 124 N.C. App. 203, 205, 476 S.E.2d 377, 379 (1996) (citation omitted).

Likewise, "[a] motion for judgment notwithstanding the verdict presents the question of whether the evidence was sufficient for submission to the jury." *Loftis v. Little League Baseball, Inc.*, 169 N.C. App. 219, 221, 609 S.E.2d 481, 483 (2005) (citation omitted). Just as a motion for directed verdict "tests the sufficiency of the evidence to go to the jury," *McMahan*, 119 N.C. App. at 237, 457 S.E.2d at 763, so too, "a motion for judgment notwithstanding the verdict challenges[] whether evidence presented at trial [*was*] legally sufficient to go to the jury," *Hinnant v. Holland*, 92 N.C. App. 142, 144, 374 S.E.2d 152, 154 (1988) (emphasis added). Its resolution requires consideration of this question after the jury has already considered the evidence and rendered a verdict rather than before being charged. *Kaperonis v. Underwriters*, 25 N.C. App. 119, 123, 212 S.E.2d 532, 535 (1975). "[O]ur standard of review for a judgment notwithstanding the verdict is the same as that for a directed

verdict; that is, whether the evidence was sufficient to go to the jury." *Papadopoulos v. State Capital Ins. Co.*, 183 N.C. App. 258, 262, 644 S.E.2d 256, 259 (2007) (citation omitted).

In the present case, Paragraph 4 of the Separation Agreement entered into by Plaintiff and Mr. Law on 12 February 2015 provides as follows:

> 4.    RELEASE OF PROPERTY AND ESTATE RIGHTS. Except as otherwise provided herein, each party hereby waives, relinquishes, renounces and quitclaims unto the other any and all rights, title, interest and control he or she may now have or shall hereafter acquire under the present or future laws of any jurisdiction, in, to or over the person, property or estate of the other, arising by reason of their marital relationship or under any previously executed instrument or will, made by either of them, including, but not limited to, dower, courtesy, statutory allowance, widow's allowance, homestead rights, right to take in event of intestacy, right to any share as the surviving spouse, any right of election, right to take against the last will and testament of the other or to dissent therefrom, right to act as administrator or executor of the estate of either, and any and all rights, title or interest of any kind in and to any said property or estate of any kind of the other, except as to Wife's marital interest in the Rollover IRA #2628 held with Fidelity in Husband's name as set forth in Paragraph 8.F. *This provision shall not apply to any Social Security benefits the parties may have by reason of their marriage to each other, to any real property retained by the parties as tenants by the entirety so long as said estate by entireties continues, and to **any beneficiary designations remaining after the date of the execution of this Agreement which name the other as beneficiary**.* In addition, except as otherwise provided herein, each party waives, releases and renounces, and hereby conveys, quitclaims and assigns over to the other party and his or her heirs, executors and administrators, any right of

inheritance under a will executed by the other party prior to the date of this Agreement, [and] any beneficial or administrative right arising under any trust created by the other party prior to the date of this Agreement.

(Emphasis added.)

Paragraph 8.F of the Separation Agreement, referenced in Paragraph 4, goes on to provide:

> F. Retirement Benefits. The parties have retirement accounts with Fidelity.
>
> The following accounts with Fidelity shall be and belong to the Wife, free from any claim by the Husband: Roth IRA #1416; Deferred Annuity #8739 (Wife's separate property); SRA International Inc. 401(k) Savings Plan #5813; Rollover IRA #4335. Wife also has an account with her current employer through The Standard. This account shall be and belong to the Wife, free of any claim by the Husband.
>
> The following accounts with Fidelity shall be and belong to the Husband, free from any claim by the Wife: Rollover IRA #4418; Roth IRA #1424; Individual Brokerage #6727; VZ Gary Law Stock Options Plan.
>
> The Rollover IRA #2628 held with Fidelity in the approximate amount of $724,589.32 as of January 31, 2014 is in Husband's name and is partially Husband's separate premarital asset and is partly marital; however due to the cost and difficulty of obtaining this information from the original plan administrator, there has been no financial disclosure by Husband of the exact amounts that were earned prior to marriage and each party waives full and complete disclosure beyond what has been provided. The parties agree that in order to accomplish a reasonable and equitable distribution of the marital retirement funds held by both parties, a lump sum amount of $250,000 (Two

Hundred Fifty Thousand Dollars), to be valued as of the date of transfer, shall be transferred from Husband's Fidelity Rollover IRA #2628 into a Fidelity IRA in Wife's name, and the remainder of said Husband's Rollover IRA account shall be Husband's sole and separate property. This transfer to Wife shall be accomplished so as to effect a non-taxable trustee to trustee transfer of this sum from Husband's aforesaid Fidelity Rollover IRA to Wife's Fidelity IRA account in accordance with Internal Revenue Code Section 408(d)(6), with said transfer to be incident to the parties' divorce decree and to be effected pursuant to an IRA transfer order to be entered with the court contemporaneously with or promptly following any divorce of the parties. Wife shall bear the cost of the drafting of the Court Order to divide the Account and the Order shall be subject to review by Husband and Husband's attorney. The parties shall sign any Order or documents necessary to effectuate the aforesaid transfer, including the full execution of any documents required by Fidelity.

At the time of Mr. Law's death in 2015, however, Plaintiff remained the beneficiary of Mr. Law's accounts at Fidelity, as his estate admitted in its answer to Plaintiff's 29 August 2017 amended complaint. Indeed, the parties stipulated to as much before trial, stipulating as follows:

> h. When Gary Ian Law died, he held three Fidelity IRA accounts: Rollover IRA #2628, #4418 and #1424.
>
> i. When Gary Ian Law created and opened account #1424 in 2006, he designated Julie L. Berke-Law as the primary beneficiary of the account.
>
> j. When Gary Ian Law created and opened account #4418 in April 2008 he designated Julie L. Berke-Law as the primary beneficiary of the account.
>
> k. When Gary Ian Law created and opened account #2628

in May 2008 he designated Julie L. Berke-Law as the beneficiary of that account.

l. Fidelity has not been able to locate any records in its custody or control that indicate that Fidelity received any written changes, modifications, or revocations from Gary Ian Law to the beneficiary designation for account #1424, #4418 prior to September 17, 2015 [the date of Mr. Law's death].

m. On September 15, 2015, Julie L. Berke-Law was listed in Fidelity's records as the designated beneficiary of Gary Ian Law's accounts #4418, #1424, and #2628. However, this is not a factual determination of the beneficiary and said issue remains before the trier of fact.

n. The Fidelity IRA Custodial Agreement and the Fidelity Roth IRA Custodial Agreement constitute the agreement between Gary Law and Fidelity regarding his IRAs.

These stipulations were based on Fidelity's responses to written discovery propounded by Plaintiff, in which Fidelity specifically admitted in response to Interrogatory No. 1 of Plaintiff's First Set of Interrogatories and Request for Production of Documents that it had never received "any written communication from Gary Ian Law prior to his death requesting to change the beneficiary of any of his Fidelity accounts." Thus, the language of Paragraph 8.F of the Separation Agreement suggesting that Mr. Law might have planned to change the beneficiary of the accounts ending in numbers 4418, 1424, and 2628 after entering into the Separation Agreement on 12 February 2015 notwithstanding, no evidence was presented to the jury during the trial that anyone other than Plaintiff was the beneficiary of the

accounts. Accordingly, we hold that the evidence that anyone other than Plaintiff was the beneficiary of the accounts was not "sufficient for submission to the jury." *Smith*, 124 N.C. App. at 205, 476 S.E.2d at 379.

Viewing the evidence in the light most favorable to Mr. Masoomi, as we must, we note that testimony was elicited during the course of the trial that certain Custodial Agreements governed Mr. Law's Fidelity accounts and that Massachusetts law was the controlling law under the terms of these Agreements. The Custodial Agreements were published to the jury, as was the Massachusetts statute identified as the applicable one on the present facts, Chapter 190B of the Massachusetts Probate Code, Article II, Section 2-804. The trial court then included the following in its charge to the jury:

> This Court has taken judicial notice of Section 2-804 of the General Laws of Massachusetts, which is Plaintiff's Exhibit Number 25, and the North Carolina General Statute Section 32A in its entirety, which is Defendant's Exhibit Number 2.

> The law provides that the Court may take judicial notice of certain facts that are so well known or so well documented that they are not subject to reasonable dispute. When the Court takes judicial notice of a fact, neither party is required to offer proof as to such fact.

> Therefore, you will accept as conclusive that: Section 2-804 of the General Laws of Massachusetts provide[s], in part, the following regarding Revocation of Probate and Non-probate Transfers by divorce; no revocation by other changes of circumstances.

> In Subsection (a), Sub 4, "governing instrument" refers to a governing instrument executed by the divorced individual before the divorce or annulment of the individual's marriage to the individual's former spouse.

> Subsection (b), *Except as provided by the expressed terms of a governing instrument, a court order or a contract related to the division of a marital estate made between the divorced individuals before or after marriage, divorce or annulment*, the divorce or annulment of a marriage revokes, Number 1, revokes any revocable disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse.

(Emphasis added.) The jury was thus read a judicially noticed provision of a Massachusetts statute, and this statute and a comparable North Carolina statute were published to the jury. Then, in the absence of any evidence that anyone other than Plaintiff was the beneficiary of Mr. Law's Fidelity accounts at the time of his death—and where the parties had essentially stipulated before trial based on Fidelity's discovery responses that the only record evidence not excluded by the trial court's 3 August 2018 order granting Plaintiff's motion in limine was that Plaintiff was the beneficiary—the jury's verdict in favor of Mr. Masoomi appears to reflect an attempt by the jury to apply the Massachusetts statute—though incorrectly—to the facts found by the jury.

"[W]here the facts are controverted, or more than one inference can be drawn from them, it is the province of the jury to pass upon an issue involving it." *Tillett v.*

*Norfolk & W.R. Co.*, 118 N.C. 1031, 24 S.E. 111, 112 (1896). When the applicable legal standard is disputed and the facts are controverted, "it becomes the duty of the judge . . . to tell the jury how to apply the law . . . to the various phases of the testimony, and the office of the jury to make the application of the law, as given by the court, to the facts as found by them." *Id.*

There was no evidence presented during the trial of this case that anyone other than Plaintiff was the beneficiary of Mr. Law's Fidelity accounts at the time of his death; indeed, the parties stipulated to as much before trial. It was not the province of the jury to determine a question of law – whether the effect of a Massachusetts statute was to revoke Mr. Law's beneficiary designations for his Fidelity accounts when the Release of Property and Estate Rights contained in Paragraph 4 of his Separation Agreement with Plaintiff specifically excepted from the Release "beneficiary designations remaining after the date of the execution of [the] Agreement which name the other as beneficiary." We therefore hold that the trial court erred in submitting the issue of whether Plaintiff was the beneficiary of the Fidelity accounts to the jury. We further hold that the Massachusetts statute in question explicitly states it does not override terms such as those found in Paragraph 4 of the Separation Agreement, specifically excepting from the general rule of revocation upon divorce where "a court order or a contract related to the division of a marital estate made between the divorced individuals before or after marriage, divorce or annulment"

provides otherwise. Mass. Gen. Laws ch. 190B, § 2-804 (2016). These holdings entail that the trial court erred both in denying Plaintiff's motions for directed verdict and for judgment notwithstanding the verdict.

### III. Conclusion

The trial court erred by denying Plaintiff's motion for directed verdict on the issue of whether she was the beneficiary of her former husband's accounts at Fidelity at the time of his death. The trial court also erred in denying Plaintiff's motion for judgment notwithstanding the verdict, as our holding that the trial court erred in denying Plaintiff's motion for directed verdict entails. We therefore reverse the trial court's judgment and award of costs.

REVERSED.

Judges STROUD and ARROWOOD concur.