IN THE MATTER OF: Stephen W. Rhyne

No. COA02-89

(Filed 3 December 2002)

**1. Evidence— telephone conversation—self-identification of caller—insufficient**

The trial court erred by admitting evidence of a telephone call in a juvenile delinquency hearing where the identity of the caller was based on the caller's self-identification. Such self-identification is not alone sufficient for admission of testimony regarding the contents of the conversation.

**2. Juveniles— delinquency—evidence linking juvenile to crime—insufficient evidence**

The trial court erred by denying a juvenile's motion to dismiss a delinquency petition that arose from the burning of athletic mats at a middle school where the only evidence linking the juvenile to the fire was testimony that the juvenile was one of the people seen on the mats about five to ten minutes before the fire started.

Appeal by juvenile from orders filed 29 October 2001 by Judge Resa L. Harris in Mecklenburg County District Court. Heard in the Court of Appeals 29 October 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gayl M. Manthei, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for juvenile appellant.*

GREENE, Judge.

Stephen W. Rhyne (Stephen) appeals juvenile delinquency adjudication and dispositional orders filed 29 October 2001.

Following a juvenile delinquency petition alleging that, on 21 April 2000, Stephen had wantonly, wilfully, and feloniously set fire to and caused to be burned several athletic mats belonging to the North East Middle School, a hearing was held before the trial court on 7 and 13 December 2000. The evidence at this hearing revealed fifteen-year-old Jeff Romanelli (Jeff) witnessed "two or three kids

IN RE RHYNE

[154 N.C. App. 477 (2002)]

down . . . by the mat[s]" on the football field when his father dropped him off at the North East Middle School for baseball practice during mid-afternoon on 21 April 2000. Ten minutes later, Jeff saw a fire where the kids previously stood. When asked if he knew any of the kids he had seen on the mats, Jeff replied: "I guess it was Stephen and I don't know anybody else." Because, however, he had observed the kids on the mats from a distance of a "[c]ouple hundred feet," Jeff indicated his vision had been impaired by the fact "that they [were] too far away." Jeff identified Stephen both through the aid of a year-book during the investigation of the fire and also in court, but testi-fied "it[] [was] quite possible that it could not be him . . . [because] of the distance [Jeff] was away" from the mats.

Christopher Koster (Chris), who had arrived at the school with Jeff, testified they were driving alongside the football field when he saw people near the area where the fire started five minutes later. Chris did not know any of them and had not looked at them closely. When asked about the person Chris had subsequently picked out of a school yearbook as one of the people he had seen, Chris identified Stephen.

Michael Fox (Fox), a deputy fire marshal who had investi-gated the scene of the fire, testified the fire was not accidental but instead "started by a[n] open flame device such as a cigarette lighter or matches igniting the mat material." During his search of the surrounding area, Fox had found a pack of cigarettes and a cigarette lighter.

The State also called Curtis Cole (Curtis), who went to the same school as Stephen, as a witness. When asked whether Curtis had given a statement to the police about a telephone call he had received from Stephen on 21 April 2000, Curtis testified he did not remember any telephone call, although it could be possible Stephen had called him. The State then asked if during this telephone conversation Stephen had admitted to setting the fire at the school. Defense coun-sel objected, at which time the trial court intervened to instruct Curtis as to the consequence of perjury. Thereafter, the State asked Curtis whether he had put Stephen on speaker phone when he received the telephone call. Curtis replied: "I might have. I don't even remember him calling me. I don't even know if he has my phone num-ber." When, over defense counsel's objection, the State again ques-tioned Curtis whether the caller had admitted setting the fire at the school, Curtis said he did not remember.

**IN RE RHYNE**

[154 N.C. App. 477 (2002)]

At the conclusion of Curtis' testimony, the trial court instructed Curtis and his mother to remain in the courthouse and that if they attempted to leave, they would be placed under arrest. The State then called Dustin Mullis (Dustin) to the stand. Dustin, who was twelve years old and a friend of Curtis, testified he was playing at Curtis' home on 21 April 2000 when Curtis received a telephone call. Curtis placed the call on speaker phone. Dustin did not recognize the caller's voice but claimed Curtis told him it was Stephen. Dustin further testified the caller admitted having set the fire at the school. Defense counsel objected to this testimony on the basis that the caller's voice had not been sufficiently identified to admit the contents of the telephone call.

At the end of the State's evidence, the State, over defense counsel's objection, requested permission to recall Curtis to the witness stand "to see if his memory ha[d] improved." The trial court allowed the State's request. The State, however, then rested its case without recalling Curtis, and defense counsel put forward witnesses to attest to Stephen's alibi defense.

At the end of Stephen's case, again over defense counsel's objection, the State requested Curtis re-take the witness stand. The trial court granted the State's request, noting "maybe we ought to give [Curtis] another opportunity." Curtis subsequently testified he remembered the telephone call but the caller's voice did not sound like Stephen's voice. When asked what the caller had told him, Curtis testified the caller introduced himself as "Stephen" and claimed to have set the fire at the school. Curtis did not remember whether he put the call on speaker phone but was certain he did not tell Dustin about the telephone conversation. Defense counsel objected and moved to strike this testimony because of Curtis' inability to identify the caller's voice but was again overruled by the trial court.

At the end of the State's evidence and at the end of all the evidence, defense counsel moved to dismiss the charge of burning personal property. The trial court denied the motions and adjudicated Stephen delinquent.

---

The issues are whether the trial court erred in: (I) admitting into evidence the contents of the telephone call and (II) denying Stephen's motion to dismiss due to insufficiency of the evidence.

IN RE RHYNE

[154 N.C. App. 477 (2002)]

I

[1] Our Supreme Court has held:

> Before a witness may relate what he heard during a telephone conversation with another person, the identity of the person with whom the witness was speaking must be established. If the call was from the person whose identity is in question, the mere fact that he represented himself to be a certain person is not enough to identify him as that person. Identity of the caller may be established by testimony that the witness recognized the caller's voice, or by circumstantial evidence.

*State v. Richards*, 294 N.C. 474, 480, 242 S.E.2d 844, 849 (1978) (internal quotations and citations omitted); *State v. Williams*, 288 N.C. 680, 698, 220 S.E.2d 558, 571 (1975).

In this case, Curtis testified to receiving a telephone call from a person who identified himself as "Stephen" but whose voice did not sound like Stephen. Dustin, who overheard the telephone conversation, also did not recognize the caller's voice. Dustin testified instead that Curtis told him Stephen had called.[1] Because Curtis did not recognize the caller's voice, any statement he made to Dustin regarding the identity of the caller was thus based on the caller's self-identification. Such self-identification, however, standing alone, is insufficient under *Richards* and *Williams* for admission of testimony regarding the contents of a telephone conversation. *See State v. Jones*, 137 N.C. App. 221, 229, 527 S.E.2d 700, 705 (2000) (identification deemed insufficient where witnesses who testified about the telephone calls did not recognize the caller's voice and simply accepted the caller's self-identification). As there was no proper identification of Stephen's voice or any circumstantial evidence that would lead to his identification, the trial court erred in admitting testimony regarding the caller's self-identification and the cause of the fire. *See, e.g., State v. Rinck*, 303 N.C. 551, 568, 280 S.E.2d 912, 924-25 (1981) (sufficient circumstantial evidence to identify caller where caller stated his name, address, and telephone number and two witnesses identified his voice from the tape recording of the telephone conversation); *Williams*, 288 N.C. at 697-98, 220 S.E.2d at 570-71 (suf-

---

1. Although this testimony presents a hearsay problem, *see* N.C.G.S. § 8C-1, Rules 803-805 (2001), we do not address this issue because defense counsel did not object to the admission of Dustin's testimony on this basis, *see State v. Burgess*, 55 N.C. App. 443, 447, 285 S.E.2d 868, 871 (1982) (failure to object to inadmissible evidence constitutes a waiver).

ficient circumstantial evidence where testimony established someone who identified himself as "George" had placed the telephone call and requested to speak to the victim and the victim, surprised and shot by the defendant in her living room only a short time thereafter, exclaimed "George").

## II

**[2]** We next address whether the remaining evidence was sufficient to warrant the trial court's denial of Stephen's motion to dismiss.

In considering a juvenile's motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the charged offense and whether the juvenile was the perpetrator of the offense. *See State v. Olson,* 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992); *In re Bass,* 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985) (the same standard as used in criminal cases applies to motion to dismiss in a juvenile action). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may be drawn from the evidence." *Bass,* 77 N.C. App. at 115, 334 S.E.2d at 782. In this case, Stephen was charged with burning personal property. Thus, the State needed to prove Stephen "wantonly and willfully set fire to or burn[ed], or cause[d] to be burned, or aid[ed], counsel[ed] or procure[d] the burning of, any . . . personal property . . . with intent to injure or prejudice . . . the person owning the property." N.C.G.S. § 14-66 (2001).

Without the testimony regarding the telephone call, the only evidence linking Stephen to the scene of the fire rests on the testimony of Jeff and Chris who identified Stephen as one of the people they had seen on the mats on the football field approximately five to ten minutes before the fire started. Without any additional circumstantial evidence, this testimony is insufficient to support the conclusion that Stephen was the perpetrator of the charged offense. *See State v. Clark,* 90 N.C. App. 489, 498, 369 S.E.2d 607, 612 (1988) ("[t]he 'mere presence' of [the defendant] at the scene of the fire, taken alone, is insufficient to incriminate her as an aider and abettor in a crime"). Accordingly, the trial court erred in denying Stephen's motion to dismiss. As the trial court's adjudication and dispositional orders must therefore be reversed, we do not address Stephen's third assignment

of error as to whether the trial court's perjury warnings to Curtis constituted error.

Reversed.

Judges MARTIN and BRYANT concur.