BRENDA JANE MACE, Plaintiff v. MONTY PYATT, CHARLES CAMERON FLACK, and WADE E. FLACK, Defendants

No. COA09-569

(Filed 6 April 2010)

## 1. Damages and Remedies— compensatory damages—punitive damages—willful and wanton conduct

Although the trial court did not err by denying defendant's motion for directed verdict and judgment notwithstanding the verdict on the issues of conspiracy and conversion, defendant was entitled to a partial new trial on the amount of compensatory damages. However, there was no error in submitting the issue of punitive damages to the jury since plaintiff proved the aggravating factor of willful and wanton conduct.

## 2. Jury— submission of issues—abuse of discretion standard

The trial court did not err by submitting the second, fifth, and eighth issues to the jury in a conspiracy and conversion case. No evidence in the record showed that the trial court abused its discretion by submitting these questions to the jury.

## 3. Appeal and Error— preservation of issues—failure to object

Although defendant objected to a portion of the jury charge at trial in a conspiracy and conversion case, defendant failed to preserve this issue for review based on his failure to object despite being given two opportunities to do so.

Appeal by defendant Charles Cameron Flack from judgment and orders entered 16 October 2008 and 12 November 2008 *nunc pro tunc* 16 October 2008 by Judge James U. Downs in Rutherford County Superior Court. Heard in the Court of Appeals 28 October 2009.

*Marvin Sparrow; and Kathryn VandenBerg for plaintiff-appellee.*

*Prince, Youngblood & Massagee, PLLC, by Sharon B. Alexander, for defendant-appellant.*

MACE v. PYATT

[203 N.C. App. 245 (2010)]

HUNTER, JR., Robert N., Judge.

Charles Flack ("defendant")[1] appeals from the decision of the trial court to enter judgment and deny his motion for directed verdict or judgment notwithstanding the verdict on the issues of conspiracy, conversion, compensatory damages, and punitive damages. A jury awarded Brenda Mace ("plaintiff") compensatory damages for conversion without the benefit of any evidence from plaintiff establishing the value of the property converted. Based upon our case law requiring proof of compensatory damages, we reverse for a partial new trial on this issue. We find no error in the jury's punitive damages award against defendant and Monty Pyatt ("Pyatt") based upon plaintiff's claims for fraud, forgery, trespass, and conversion.[2] We also affirm the trial court's order setting aside the defective deeds, and lowering the punitive damages award to $250,000 to conform with N.C. Gen. Stat. § 1D-25 (2007). Because the evidence was sufficient to take all these issues to the jury except the compensatory damages issue, we find no error in part and grant a partial new trial on the issue of compensatory damages.

## BACKGROUND

The evidence presented at trial tended to show the following. In August 2002, plaintiff owned 12 acres of land on Cedar Creek Road, Lake Lure, Rutherford County, North Carolina (the "Cedar Creek Property"). A single house trailer containing plaintiff's household property was located on the Cedar Creek Property. In October 2002, plaintiff suffered a severe car accident requiring an extensive recovery period, which necessitated her staying with friends until she made plans to move back to the property in the fall of 2003. During the interim, plaintiff's son periodically lived on the property until he moved out in October 2003. During the entire time of plaintiff's recuperation, plaintiff visited her trailer about once a week in order to retrieve her mail and check on the property.

Between October and December 2003, in order to raise money to move back into the trailer, plaintiff asked Earl Lytle to fell and sell

1. No damages were awarded against Wade Flack in the jury verdict, and plaintiff's complaint shows that he was joined in the action only as a necessary party due to his alleged ownership interest in plaintiff's real estate. Defendant's brief on appeal does not challenge the trial court's order setting aside the deed granting Wade Flack his supposed interest in plaintiff's land.

2. The record shows that default judgment was entered against Pyatt due to his failure to file a responsive pleading or appear in court after being properly served. Pyatt is accordingly not a party in the current appeal.

several trees from the Cedar Creek Property. After visiting the property to locate the timber, Mr. Lytle notified plaintiff that there was a "problem." Plaintiff drove to the property to investigate, and observed a camper parked next to her trailer.

At the Rutherford County Register of Deeds Office, plaintiff's research uncovered a paper writing recorded on 20 May 2003 purporting to transfer her interest in the Cedar Creek Property to Pyatt for the sum of $1.00. Pyatt lived across the street from the Cedar Creek Property with his parents.

Plaintiff also discovered a chain of deeds, following the 20 May 2003 deed, purportedly transferring her property. On 2 June 2003, a deed was signed transferring Pyatt's alleged interest in the Cedar Creek Property to defendant. On 15 October 2003, defendant signed a deed transferring his purported interest to Raul and Sonja McFaddin. The deeds from Pyatt to defendant and from defendant to the McFaddins were recorded on 20 November 2003. Defendant testified that he received $50,000 on the sale of the Cedar Creek Property to the McFaddins.

In January 2004, plaintiff returned to the Cedar Creek Property, and found a gate blocking her entrance to the land. Plaintiff noticed that the McFaddins' camper was still on the property, but that her trailer had been removed from its foundation, and relocated about 200 feet to a field next to a nearby creek. Most of plaintiff's personal items and furniture were ripped apart, strewn about the grounds, and left exposed to the elements. Several household appliances were missing altogether, including plaintiff's refrigerator and stove. The trailer's windows, doors, and exterior were destroyed, and water damage existed throughout the home. Inside the trailer, the carpet was torn away from the floor, wires were pulled and left dangling from the ceiling, light fixtures and ceiling fans were dislocated, and the furnace was dislodged and ruined. Items from inside plaintiff's separate storage building were also vandalized and left to the elements. While on the property, plaintiff took pictures of the damage. Several days later, plaintiff returned to the Cedar Creek Property, and discovered that the trailer and all her possessions had been removed. At trial, plaintiff testified that she had not seen or recovered either her trailer or personal property.

Carl Ledford, plaintiff's neighbor and Pyatt's stepfather, testified at trial. Mr. Ledford stated that sometime after plaintiff's ex-husband died in May 2003, he noticed some activity on the Cedar Creek

MACE v. PYATT

[203 N.C. App. 245 (2010)]

Property. When Mr. Ledford walked over to investigate, he saw Pyatt and defendant standing by plaintiff's trailer. Mr. Ledford recounted at trial the conversation he had with Pyatt that day.

A. . . . I said, "Son, what are you doing over here?"

. . . .

A. . . . He told me, he said, "Well, [defendant] bought this land." I said, "He did?" I said, "How can he buy this land when [plaintiff] is in Cherokee?" He said, "Well, he did." I said, "How could he buy this land?" He said, "I sold it to him." I said, "What?" He said, "I sold it to him."

. . . .

A. He said, "I sold [defendant] the land for a dollar." I said, "You done what?" I said, "You don't even work." I said, "You couldn't even get a dollar." He said, "[Defendant] let me borrow it."

Q. Okay. So did he say how he got the land from [plaintiff]?

A. Yeah. He and [defendant] made a deed. I said, "Who made it?" He said, "I don't know," he said, "but he made it." I said, "Son, you are going to get into some serious trouble." And he—he said, "Well, I get in trouble all the time anyway."

. . . .

Q. Where was [defendant] standing when you had this conversation with [Pyatt]?

A. Oh, about 20 feet, I guess, or more.

. . . .

Q. Did he contradict anything that [Pyatt] said?

A. No.

The day after this conversation, Mr. Ledford witnessed someone moving plaintiff's trailer to the field next to the creek. Mr. Ledford could not identify with certainty who was in the truck, but he testified without objection that it looked like defendant. Mr. Ledford also testified that plaintiff's trailer remained by the creek for three days before another party came to take the trailer away. When Mr. Ledford asked Pyatt where the trailer was taken, he told Mr. Ledford that he sold it for $400, and that he and defendant each took half of the proceeds.

MACE v. PYATT

[203 N.C. App. 245 (2010)]

The McFaddins' attorney, Richard Williams, testified that the McFaddins began to have concerns about their ownership interest in the Cedar Creek Property. Mr. Williams advised the McFaddins that there was a potential problem with their title, and Mr. Williams contacted defendant's attorney. Defendant testified that his attorney contacted him about purchasing the land back from the McFaddins, but defendant claimed that the McFaddins never expressed any concern about whether there was a defect in their title. A deed recorded in June 2005 shows that defendant repurchased the Cedar Creek Property from the McFaddins for $55,000. However, defendant testified at trial that Wade Flack purchased the land from the McFaddins, even though defendant's name and signature appears on the deed and on the loan documents as a borrower.

On 4 November 2005, several transactions occurred with respect to the Cedar Creek Property: defendant transferred title to KD Properties, LLC, and KD Properties transferred its interest to David Knouse. On 22 November 2005, Mr. Knouse signed a warranty deed transferring title of the Cedar Creek Property to both defendant and Wade Flack. Defendant testified at trial that no money exchanged hands, and that the purchase money from KD Properties, $350,000, remained in the closing attorney's trust account during all subsequent transactions.

Defendant testified at trial, and claimed that Pyatt approached him for a loan to purchase some real estate. He stated that after Pyatt bought plaintiff's land, Pyatt offered to sell defendant the Cedar Creek Property for approximately $36,000. Defendant said that he forgave some of Pyatt's loans, traded to Pyatt several automobiles, and paid some cash in purchasing the property. Defendant denied having any knowledge of a forged deed, and said that he had no part in destroying plaintiff's trailer and other personal property.

Plaintiff offered an affidavit from Pyatt at trial. Under oath, Pyatt admitted to forging the deed wherein he purportedly received ownership of the Cedar Creek Property from plaintiff. Pyatt claimed that defendant approached him with the deed, and told him that if he signed it, defendant would forgive the debts that Pyatt owed him. The trial court limited this evidence as admissible only against Pyatt.

On 16 June 2006, plaintiff filed a complaint against Pyatt, defendant, and the McFaddins. On 25 October 2006, default judgment was entered against Pyatt as to the forged deeds, fraud, and damage to plaintiff's personal property. Defendant filed an answer to plaintiff's

complaint on 27 March 2007. Plaintiff thereafter filed an amended complaint: (1) adding Wade Flack as a defendant; (2) withdrawing the action against the McFaddins; (3) adding causes of action for forgery, trespass, and conversion; and (4) adding a claim for punitive damages. Wade Flack filed an answer and counterclaim on 12 June 2008 asking that the *lis pendens* filed by plaintiff be removed.

Trial began on 6 October 2008, and on 8 October 2008, the jury returned its verdict finding: (1) plaintiff did not execute the 20 May 2003 deed to Pyatt; (2) defendant and Pyatt conspired to have the 20 May 2003 deed executed by someone other than plaintiff; (3) Pyatt converted plaintiff's trailer and its contents to his own use; (4) defendant participated in the conversion of plaintiff's trailer and its contents; (5) plaintiff suffered damages of $50,000; (6) Pyatt's conversion of plaintiff's personal property was accompanied by outrageous or aggravated conduct; (7) defendant's conversion of plaintiff's personal property was accompanied by outrageous or aggravated conduct; (8) plaintiff was entitled to $500,000 in punitive damages; (9) plaintiff's cause of action was commenced within three years of Wade Flack purportedly acquiring title to the Cedar Creek Property; and (10) plaintiff's claim against Wade Flack was not barred by laches.

On 14 October 2008, defendant and Wade Flack filed motions under Rule 50 of the North Carolina Rules of Civil Procedure for a directed verdict or judgment notwithstanding the verdict and remittitur of the amount of punitive damages under section 1D-25. On 16 October 2008, the trial court entered two orders granting partial relief on the post-trial motions. The orders voided the invalid deeds, and reduced the punitive damages award from $500,000 to $250,000. The trial court amended its order concerning punitive damages on 12 November 2008 without any substantive changes to its ruling on the post-trial motions. Defendant and Wade Flack filed a notice of appeal on 14 November 2008 as to the judgment and the trial court's orders denying their post-trial motions.

ANALYSIS

I.

[1] Defendant argues that the trial court erred by denying defendant's motion for directed verdict and judgment notwithstanding the verdict on the issues of: (1) whether Pyatt and defendant engaged in a conspiracy to forge the 20 May 2003 deed; (2) whether defendant converted plaintiff's belongings; and (3) whether plaintiff

was entitled to compensatory and punitive damages. We address each in turn.

## A. Standard of Review

"On appeal our 'standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to the jury.'" *Whitaker v. Akers*, 137 N.C. App. 274, 277, 527 S.E.2d 721, 724 (2000) (citation omitted). This Court must view the evidence in the light most favorable to the non-movant, and the non-movant is entitled to every reasonable inference therefrom. *Papadopoulos v. State Capital Ins. Co.*, 183 N.C. App. 258, 262, 644 S.E.2d 256, 259 (2007). Any conflicts or inconsistencies apparent in the evidence must be construed in favor of the non-movant, and "[i]f there is more than a scintilla of evidence supporting each element of the non-moving party's claim[,]" then a motion for a directed verdict must be denied. *Jernigan v. Herring*, 179 N.C. App. 390, 393, 633 S.E.2d 874, 877 (2006). "A scintilla is some evidence, and is defined by this Court as 'very slight evidence.'" *State v. Lawrence*, 196 N.C. 562, 582, 146 S.E. 395, 405 (1929) (Brogden, J. dissenting) (quoting *State v. White*, 89 N.C. 462, 1883 WL 2551 (1883)).

## B. Conspiracy to Commit Forgery

The elements of civil conspiracy are: "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (citations omitted). This formulation of conspiracy was presented to the jury by the trial court in this case.

The testimony most critical to establishing a conspiracy between defendant and Pyatt as to the preparation and execution of the 20 May 2003 deed was Mr. Ledford's recitation of this conversation with Pyatt:

Q. Okay. So did [Pyatt] say how he got the land from [plaintiff]?

A. Yeah. *He and [defendant] made a deed.* I said, "Who made it?" He said, "I don't know," he said, "but *he made it.*" I said, "Son, you are going to get into some serious trouble." And he—he said, "Well, I get in trouble all the time anyway."

(Emphasis added.) Defendant contends that this testimony was insufficient to submit the question of conspiracy to the jury for two reasons: (1) Pyatt's allegations were inadmissible *ex parte* statements made by an alleged co-conspirator; and (2) during cross-examination, Mr. Ledford indicated that the deed Pyatt was talking about was the 2 June 2003 deed transferring Pyatt's interest to defendant and not the 20 May 2003 deed.

As to defendant's first contention, even assuming that Mr. Ledford's testimony was inadmissible, the record shows that no hearsay objection was made during this portion of Mr. Ledford's testimony. As a result, review as to whether this evidence was admissible has been waived by defendant, and we are bound to recognize Mr. Ledford's testimony as part of the evidentiary record supporting plaintiff's contention that defendant engaged in a civil conspiracy. N.C.R. App. P. 10(a)(1) (2009); *In re Rhyne*, 154 N.C. App. 477, 480 n.1, 571 S.E.2d 879, 881 n.1 (2002) (no objection to hearsay evidence results in waiver). As to defendant's second argument, we must view all alleged inconsistencies in the evidence in plaintiff's favor. *Jernigan*, 179 N.C. App. at 392-93, 633 S.E.2d at 877. Thus, even if Mr. Ledford directly contradicted his prior testimony on cross-examination, the resolution of the discrepancy was strictly within the province of the jury.

This portion of Mr. Ledford's testimony, standing alone, is certainly more than a scintilla of evidence supporting plaintiff's claim that defendant and Pyatt entered into an agreement to forge the 20 May 2003 deed, and that defendant committed acts in furtherance of the agreement which led to plaintiff's harm. *See Nye v. Oates*, 96 N.C. App. 343, 347, 385 S.E.2d 529, 531-32 (1989). Defendant's motion for directed verdict or judgment notwithstanding the verdict was thus properly denied on the issue of conspiracy. These assignments of error are overruled.

## C. Conversion

Mr. Ledford also provided testimony critical to proving defendant's culpability in the conversion of plaintiff's personal property. In addition to implicating defendant regarding the forged deed, Mr. Ledford further testified, without objection:

A. Now, the next day, I looked over there and they were pulling the trailer out.

Q. Okay. Who is "they" that were pulling the trailer out?

A. I couldn't see who was in the' truck, but it looked like [defendant].

Q. All right.

A. When they pulled it down, there's a field before you go up to where the trailer was, and pulled the trailer out in the field and left it there. And it stayed there—it stayed there for three days solid, that I know for sure. And the guy up the road come and got it and took it up the hill. I asked [Pyatt], I said, "What are you going to do with that trailer?" He said, "I sold it." He said—I said, "How can you sell it? It don't belong to you." He said, "Well, I did." He said, "I sold it for $400." He said, "I got $200 and [defendant] got $200." That's what he told me.

Q. Okay. That he got 200 and [defendant] got 200?

A. Right.

Absent an objection by defendant in the record, this evidence was sufficient to present plaintiff's claim of conversion against defendant to the jury under the standard of review in this case. This assignment of error is overruled.

D. Damages

The record is replete with evidence showing that plaintiff did, in fact, suffer damage. Photographs of plaintiff's destroyed personal property were offered, and plaintiff testified that she has not recovered a single item of personal property that was taken. However, at trial, no evidence was offered by plaintiff as to the amount of compensatory damages that were incurred as a result of the conversion of her personal property. Defendant argues on appeal that the trial court erred by submitting the question of compensatory and punitive damages to the jury when no evidence in the record corroborates the jury's calculation of plaintiff's award.

At trial, the trial court offered commentary on the lack of evidence on compensatory damages:

But candidly speaking, there was no evidence offered as to what [the trailer's] fair market value or the contents were at the . . . time. The best evidence, if any evidence, shows and contends those parties or that party was going to sell the property for approximately $400.

And since she doesn't have it and it's gone, the fair market value of [the trailer] . . . after conversion would be approximately

zero. What, if anything, the difference is between what it was worth and what it was worth before and after the transaction is for you and you alone to find.

Following this jury charge, the jury found the compensatory damages for plaintiff to be $50,000. We agree with defendant that submitting the issue of compensatory damages to the jury was reversible error.

"The burden of proving damages is on the party seeking them." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547, 356 S.E.2d 578, 586 (1987). "When compensatory damages are susceptible of proof with approximate accuracy and may be measured by some degree of certainty, they must be so proved. Evidence wanting in such proof will not justify a verdict of substantial damages." *Midgett v. Highway Commission*, 265 N.C. 373, 378, 144 S.E.2d 121, 125 (1965).

In *Lieb v. Mayer*, 244 N.C. 613, 94 S.E.2d 658 (1956), the plaintiff sued the defendant for damages arising from a car accident, and the jury returned a verdict in favor of the plaintiff for $6,250. *Lieb*, 244 N.C. at 614, 94 S.E.2d at 658. At trial, the plaintiff explained, in elaborate detail, that her car was destroyed by the accident, and that defendant had caused the damage to her car. *Id.* at 615, 94 S.E.2d at 659. Our Supreme Court granted a partial new trial on the issue of compensatory damages, and provided in relevant part:

> There is no evidence as to the value of plaintiff's car before the collision or as to its condition at that time. Had it ever been in a collision before this time? How many miles had it been driven? What was its value after the wreck? What was the cost of repairs? The evidence gives no answer. It is plain that plaintiff's evidence makes out a case for the recovery of nominal damages to her car, . . . but her evidence fails to show adequate facts upon which a substantial recovery for damages to her car can be based. Damages are never presumed. The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for their assessment, according to some definite and legal rule.

*Id.* at 616, 94 S.E.2d at 659-60.

Here, as in *Lieb*, plaintiff has conclusively shown that she has suffered at least nominal damages due to the loss of her trailer and other personal property. Therefore, given that there is no evidence supporting the jury's substantial compensatory damages of $50,000, we

must vacate the judgment on this issue, and grant a partial new trial on the issue of compensatory damages.

Defendant also claims that the trial court erred in submitting the question of punitive damages to the jury due to plaintiff's failure to show compensatory damages. However, our reversal on the issue of compensatory damages does not require us to disturb the punitive damages award.

It is well established that merely "[n]ominal damages may support a substantial award of punitive damages." *Zubaidi v. Earl L. Pickett Enters., Inc.*, 164 N.C. App. 107, 118, 595 S.E.2d 190, 196 (2004). " '[O]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages, which in turn support an award of punitive damages.' " *Hawkins v. Hawkins*, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992) (quoting *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991)). Nominal damages need only be *recoverable* to support a punitive damages award, and a finding of nominal damages by the jury is not required where plaintiff has sufficiently proven the elements of her cause of action. *Id.*

Here, the judge instructed on nominal damages, and the jury found that plaintiff had proven her causes of action against defendant. Nominal damages were thus recoverable for the loss of her personal property as a matter of law, and plaintiff's punitive damages award can be properly supported by an award of nominal damages standing alone. *Hawkins*, 331 N.C. at 745, 417 S.E.2d at 449.

Defendant also argues that plaintiff did not prove any aggravating factors by clear and convincing evidence to support her punitive damages claim as required by N.C. Gen. Stat. § 1D-15 (2007).[3]

Section 1D-15 provides:

(a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1) Fraud.

(2) Malice.

(3) Willful or wanton conduct.

---

3. Defendant does not challenge the amount of punitive damages awarded by the jury.

N.C.G.S. § 1D-15. " 'Willful or wanton conduct' means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." N.C. Gen. Stat. § 1D-5(7) (2007).

The jury awarded punitive damages only on plaintiff's claim for conversion. The simple definition of conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Myers v. Catoe Construction Co.*, 80 N.C. App. 692, 695, 343 S.E.2d 281, 283 (1986). " 'The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act.' " *Lake Mary Ltd. Part. v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001) (citation omitted). " '[T]he general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property.' " *Id.* (citation omitted).

At trial, plaintiff demonstrated that defendant did not merely deprive plaintiff of her ownership rights to her personal property; a *prima facie* showing which would have been sufficient to support a cause of action for simple conversion. Plaintiff's personal belongings were destroyed beyond repair—some items being of significant emotional importance. By purposely entering plaintiff's property, pillaging her assets, and then removing or eradicating every one of plaintiff's personal possessions located at the Cedar Creek Property, defendant, at the very least, showed a "conscious and intentional disregard of and indifference to the rights and safety of others[.]" N.C.G.S. § 1D-5(7). Moreover, the jury's finding that defendant's conversion was accompanied by an aggravating factor was supported by clear and convincing evidence: (1) testimony that defendant and Pyatt conspired to acquire the Cedar Creek Property; (2) testimony that defendant likely moved plaintiff's trailer to the field by the creek; (3) pictures showing that plaintiff's personal property was vandalized; and (4) testimony that defendant and Pyatt split the proceeds of plaintiff's trailer.

The evidence in the record shows that plaintiff proved at least one aggravating factor, willful and wanton conduct, by clear and con-

vincing evidence. Therefore, the trial court did not err in submitting the question of punitive damages to the jury, and the punitive damages award was properly supported by the evidence. Defendant's assignments of error concerning punitive damages are overruled.

Based on the foregoing, we grant a partial new trial on the amount of compensatory damages, and find no error in the punitive damages award.

II.

[2] Defendant claims that the trial court erred in submitting the second, fifth, and eighth issues to the jury. We disagree.

"[T]he trial court has wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are 'sufficiently comprehensive to resolve all factual controversies[.]' " *Murrow v. Daniels*, 321 N.C. 494, 499-500, 364 S.E.2d 392, 396 (1988) (citation omitted), *overruled in part on other grounds, Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). "With respect to the jury charge, this Court reviews jury instructions contextually and in their entirety." *Alston v. Britthaven, Inc.*, 177 N.C. App. 330, 334, 628 S.E.2d 824, 828 (2006). The burden is on the complaining party to show that the delivered instructions likely misled the jury. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987). "If the instructions 'present[] the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed,' then they will be held to be sufficient." *Alston*, 177 N.C. App. at 334, 628 S.E.2d at 828 (quoting *Jones v. Satterfield Dev. Co.*, 16 N.C. App. 80, 86-87, 191 S.E.2d 435, 440 (1972)).

The questions challenged by defendant read as follows:

2. If so, did the defendant, Monty Pyatt and defendant, Charles Cameron Flack conspire to have the aforesaid deed executed and delivered by someone other than plaintiff, Brenda Jane Mace?

. . . .

5. What amount of damages, if any, is the plaintiff, Brenda Mace entitled to recover from the defendant or defendants as the case may be?

. . . .

8. What amount of punitive damages, if any, does the jury in its discretion, award to the plaintiff, Brenda Jane Mace?

On the second jury question, defendant argues that the issue, such as it is presented, "presume[s] that both Pyatt and [defendant] were responsible for the execution and recordation of the deed rather than either of them alone[.]" Defendant's argument has no merit, because the very essence of the question, on its face, is whether defendant and Pyatt engaged in a "conspiracy" to execute and deliver a forged deed. The inquiry of whether defendant and Pyatt undertook any individual actions regarding the 20 May 2003 deed was wholly irrelevant to the determination of whether a conspiracy existed. Since defendant makes no argument that the second question misled the jury on the issue of conspiracy, it is apparent that the trial court did not abuse its discretion in submitting this issue to the jury.

Concerning the fifth jury question, defendant claims that the issue "does not clearly separate the exposure of [defendant] for damages from that of [Pyatt]." However, the simple text of the question asks: (1) whether plaintiff is entitled to damages, and (2) whether plaintiff can recover from "either the defendant or defendants as the case may be[.]" Clearly, based on the scope of the question, the jury had the discretion to award damages as to only one or all of the named defendants, including Pyatt and defendant. Surely the jury was not misled by the question so as to be hog-tied into awarding a disproportionate amount of damages against defendant. The trial court therefore did not abuse its discretion in submitting this issue to the jury.

Defendant lastly contends that the eighth jury question unfairly links the punitive damages caused by defendant with those caused by Pyatt. Jury questions six and seven, however, quite adequately provided the jury with the ability to separate liability on the issue of punitive damages.

6. Was the defendant, Monty Pyatt's conversion of the plaintiff, Brenda Mace's personal property accompanied by outrageous or aggravated conduct?

7. Was the defendant, Charles Cameron Flack's, conversion of the plaintiff, Brenda Mace's personal property accompanied by outrageous or aggravated conduct?

Prior to these questions, the jury was given an opportunity to determine: (1) whether a conspiracy existed to forge the deed, (2) whether defendant helped Pyatt convert plaintiff's personal property, and (3) whether one or all defendants would have to pay compensatory dam-

ages. After these three opportunities to separate the conduct of defendant from Pyatt's, the jury was given an opportunity in questions six and seven to spare defendant the burden of a punitive damages award. The jury chose not to do so. Viewing question eight in its context, there is no " 'no reasonable cause to believe the jury was misled or misinformed' " on the issue of punitive damages. *Alston*, 177 N.C. App. at 334, 628 S.E.2d at 828 (citation omitted).

No evidence in the record shows that the trial court abused its discretion in submitting these questions to the jury. These assignments of error are overruled.

### III.

**[3]** Defendant lastly takes exception to a portion of the jury charge where the trial court characterized part of plaintiff's cause of action.

The plaintiff Ms. Mace says and contends that Pyatt was nothing more than a straw man who did the bidding for Mr. Flack. And as such that he had this agreement or deed completed and signed by somebody other than Ms. Mace and was an act agreed upon by both of them. And she has the burden of proving that.

Defendant did not object to this portion of the jury charge at trial, despite being given two opportunities to do so. Accordingly, we dismiss this assignment of error due to defendant's failure to preserve the issue for appellate review. *Marketplace Antique Mall, Inc. v. Lewis*, 163 N.C. App. 596, 601, 594 S.E.2d 121, 125 (2004).

### CONCLUSION

We grant a partial new trial on the issue of compensatory damages and otherwise find no error.

No error in part, and new trial in part.

Judges ELMORE and STEELMAN concur.