Window World of N. Atlanta, Inc. v. Window World, Inc., 2018 NCBC 110.

STATE OF NORTH CAROLINA

WILKES COUNTY

WINDOW WORLD OF NORTH
ATLANTA, INC., MICHAEL
EDWARDS and MELISSA
EDWARDS

         Plaintiffs,

v.

WINDOW WORLD, INC.,
WINDOW WORLD
INTERNATIONAL, LLC and
ANDREW SAVILLE

         Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 70

**ORDER AND OPINION ON
DEFENDANT ANDREW SAVILLE'S
MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court on Defendant Andrew Saville's ("Saville") Motion to Dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure in the above-captioned case (the "Motion").

2.    Having considered the Motion, the briefs in support of and in opposition to the Motion, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS** the Motion.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Robert J. King III, Charles E. Coble, Benjamin R. Norman, and Andrew L. Rodenbough, for Plaintiffs Window World of North Atlanta, Inc., Michael Edwards, and Melissa Edwards.*

*Wilson Ratledge, PLLC, by Reginald B. Gillespie, Jr., for Defendant Andrew Saville.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Welborn, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner &*

*Goode LLC, by Mark M. Leitner, Joseph S. Goode, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Rather, the Court only recites the relevant allegations asserted in the pleading—here Plaintiff's Complaint.

4. Defendant Window World, Inc. ("Window World" or the "Company") is a North Carolina corporation with its principal place of business in Wilkes County, North Carolina. (Compl. ¶ 5, ECF No. 3.) Window World is in the business of franchising the Window World business to franchisees, who purchase materials such as windows, doors, and siding, from third-party suppliers at wholesale and install the products under the Window World name. (Compl. ¶ 9.) Window World also licenses the use of Window World's trademarks and other Window World intellectual property to its franchisees. (Compl. ¶ 9.)

5. Defendant Window World International, LLC ("WWI") (collectively with Window World, the "Window World Defendants") is a Delaware limited liability company with its principal place of business in Wilkes County, North Carolina. WWI purports to own Window World's trademarks and other intellectual property, which

it licenses to Window World. (Compl. ¶ 6.) WWI is owned solely by Window World's Chairman and CEO, Tammy Whitworth. (Compl. ¶ 6.)

6. Plaintiffs Michael and Melissa Edwards (the "Edwardses"), both of whom are residents of Georgia, own and operate a Window World franchise in the Atlanta, Georgia area. (Compl. ¶¶ 2–4.) That franchise, Plaintiff Window World of North Atlanta, Inc. ("WWNA," collectively with the Edwardses, "Plaintiffs"), is a Georgia corporation. (Compl. ¶ 1.)

7. Saville is a Georgia resident who owns and operates a Window World franchise in Columbus, Georgia. (Compl. ¶ 7.)

8. According to Plaintiffs, in 2008, Todd Whitworth, then CEO and owner of Window World, entered into an oral agreement with Michael Edwards (the "2008 Oral Agreement"). (Compl. ¶¶ 13–14.) Under the 2008 Oral Agreement, Michael Edwards and any entity he formed were granted the exclusive right to use Window World's trademarks and other intellectual property in the designated marketing area of Atlanta, Georgia (the "Atlanta DMA"), which included specified areas of Georgia and Alabama. (Compl. ¶¶ 1, 12–13.) The 2008 Oral Agreement provided that in exchange for assuming a substantial amount of debt from a prior owner in the Atlanta DMA, Michael Edwards could immediately begin operating a Window World franchise in the northern portion of the Atlanta market, and when the time came to absorb the southern part of the Atlanta market, Michael Edwards would have the exclusive right to use Window World's trademarks and intellectual property in all areas within the Atlanta DMA. (Compl. ¶¶ 13–14.) The 2008 Oral Agreement was

subsequently ratified and reaffirmed on several occasions, including at a Company Christmas party in 2009. (Compl. ¶¶ 15–16.)

9. Since 2009, Michael Edwards, through WWNA (the entity Michael Edwards formed to operate the Window World franchise in Atlanta), has used Window World's trademarks and other intellectual property throughout the Atlanta DMA in association with WWNA's business. (Compl. ¶ 17.) Plaintiffs have also spent millions of dollars in advertising the Window World brand in all areas within the Atlanta DMA, establishing goodwill and brand recognition, and rehabilitating the previously "failed" Atlanta DMA. (Compl. ¶ 21.) At the same time, Plaintiffs have assumed and retired all outstanding debt as required under the 2008 Oral Agreement. (Compl. ¶ 20.)

10. In 2017, while Plaintiffs were still operating as a Window World franchisee in the Atlanta DMA, Window World entered into an agreement with Saville, who was then a Window World franchisee operating in Columbus, Georgia. (Compl. ¶ 23.) Under the agreement between Saville and Window World (the "2017 Carrollton Agreement"), Saville was granted the exclusive right to use Window World's trademarks and other intellectual property in a portion of the Atlanta DMA known as the "Carrollton Territory." (Compl. ¶ 23.) Plaintiffs allege that by granting Saville these exclusive rights within the Atlanta DMA, Window World breached the 2008 Oral Agreement. (Compl. ¶ 23.)

11. Plaintiffs further contend that Window World contracted with Saville to punish Plaintiffs for seeking to enforce their legal rights against the Window World

Defendants in a previous action. In early 2015, several Window World franchisees, including Plaintiffs, filed a lawsuit against the Window World Defendants for alleged corporate misconduct (the "2015 Window World Lawsuit"). (Compl. ¶ 27.) According to Plaintiffs, Window World "purported to award the Carrollton Territory to Saville . . . for the purpose of inflicting harm upon Michael and Melissa Edwards's Window World business in Atlanta and as retribution for their pursuit of legal claims against [the Window World Defendants]." (Compl. ¶ 26.) Plaintiffs do not, however, allege that Saville had any involvement, interest, or stake in the 2015 Window World Lawsuit, nor do they allege that Saville had knowledge of the 2015 Window World Lawsuit at the time he entered into the 2017 Carrollton Agreement. (*See generally* Compl.)[1]

12.	Plaintiffs filed their Complaint in this action on January 22, 2018. Plaintiffs (i) seek a declaratory judgment that they have the exclusive right to use Window World's trademarks and other intellectual property in the Atlanta DMA, (Compl. ¶¶ 28–33), (ii) assert claims for relief against Window World for breach of contract and, in the alternative, unjust enrichment, (Compl. ¶¶ 34–45), and (iii) allege claims against Saville for conversion, tortious interference with contract, and unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, (Compl. ¶¶ 46–60).

13.	On April 30, 2018, Saville filed the Motion, seeking dismissal of Plaintiffs' claims for conversion, tortious interference, and unfair or deceptive trade practices under Rule 12(b)(6).

---

[1] Only three paragraphs of the Complaint assert substantive factual allegations involving Saville. (*See* Compl. ¶¶ 23–25.)

14. The Court held a hearing on Saville's Motion on July 17, 2018, at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

15. In ruling on a motion to dismiss under Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback,* 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979)).

16. The Court will not grant a motion to dismiss "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted). Therefore, dismissal of a claim pursuant to Rule 12(b)(6) is only proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

17. The Court construes the allegations in the pleading "in the light most favorable to the non-moving party." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017). The Court is not, however, required "to accept

as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005); *see also McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013). The Court may also reject allegations "that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

## III.

## ANALYSIS

### A.   Conversion

18.   Plaintiffs allege that Saville converted Plaintiffs' exclusive right to use Window World's trademarks and intellectual property in the Carrollton Territory. Saville contends that this claim should be dismissed under Rule 12(b)(6) because Plaintiffs have not alleged that Saville converted their personal property, as required under North Carolina law. The Court agrees with Saville.

19.   Under North Carolina law, "[t]he tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quotation marks omitted) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)). Our courts have emphasized that "[t]he essence of conversion is not the acquisition of

property by the wrongdoer, but a wrongful deprivation of it to the owner[.]" *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008) (quoting *Lake Mary LP v. Johnston,* 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001)). In short, "there is no conversion until some act is done which is a denial or violation of the plaintiff's domination over or rights in the property." *Mace v. Pyatt*, 203 N.C. App. 245, 256, 691 S.E.2d 81, 90 (2010) (quoting *Lake Mary LP*, 145 N.C. App. at 532, 551 S.E.2d at 552).

20.  "In North Carolina, only goods and personal property are properly the subjects of a claim for conversion." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000). In contrast, an intangible interest cannot provide the basis for a conversion claim. *Id.*; *see TSC Research, LLC v. Bayer Chemicals Corp.*, 552 F. Supp. 2d 534, 542–43 (M.D.N.C. 2008) (dismissing claim for conversion of intangible property and noting that "current law clearly indicates that North Carolina limits the forms of property subject to conversion"); *Horne Heating & Air Conditioning Co. v. Horne*, 2017 NCBC LEXIS 96, at *9 (N.C. Super. Ct. Oct. 11, 2017) ("North Carolina law is clear that 'intangible interests such as business opportunities and expectancy interests' are not subject to a conversion claim.").

21.  Here, Plaintiffs' conversion claim centers on their contention that Saville converted a portion of Plaintiffs' exclusive right under the 2008 Oral Agreement to use Window World's trademarks and intellectual property in the Atlanta DMA when he obtained the right to operate as a Window World franchisee in the Atlanta DMA under the 2017 Carrollton Agreement. Plaintiffs further contend that, at the same

time, Saville converted to his own use the benefits flowing from Plaintiffs' prior advertising in the Carrollton Territory.

22. Neither Plaintiffs' rights under the 2008 Oral Agreement nor Plaintiffs' alleged advertising benefits are goods or personal property, and thus neither may properly be the subject of a conversion claim. To the contrary, Plaintiffs' rights under the 2008 Oral Agreement are both contract rights and trademark rights, neither of which is tangible property upon which a claim for conversion may be based. *See, e.g.*, *Horne*, 2017 NCBC LEXIS 96, at *9 (dismissing claim for conversion of contract rights, which are "deemed an intangible interest under North Carolina law") (citing *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 583, 541 S.E.2d 157, 166 (2000)); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *57–58 (N.C. Super. Ct. July 14, 2015) (dismissing claim for conversion of trademark rights because "[t]rademark rights are intangible property"); *see also SQL Sentry, LLC v. ApexSQL, LLC*, 2017 NCBC LEXIS 107, at *4 (N.C. Super. Ct. Nov. 20, 2017) ("North Carolina does not recognize a claim for conversion of intangible interests, such as trademarks"). Similarly, any benefits flowing from Plaintiffs' advertising is in the nature of a business opportunity or expectancy and thus constitutes an intangible interest that cannot support a claim for conversion. *See Norman*, 140 N.C. App. at 414, 537 S.E.2d at 264 ("Nor are intangible interests such as business opportunities and expectancy interests subject to a conversion claim.").

23. Accordingly, the Court concludes that Plaintiffs' conversion claim against Saville fails as a matter of law and should be dismissed.

B.   Tortious Interference with Contract

24. Plaintiffs allege that Saville tortiously interfered with the 2008 Oral Agreement between Plaintiffs and Window World. Under North Carolina law, a plaintiff alleging a claim for tortious interference with contract must plead the following:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); *see Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992); *Lenders Funding, LLC v. Waim Mgmt. Co.*, 2018 NCBC LEXIS 67, at *4–5 (N.C. Super. Ct. July 6, 2018).

25. Here, Saville argues that Plaintiffs' Complaint fails to adequately plead that Saville (i) had knowledge of the 2008 Oral Agreement, (ii) intentionally induced Window World to breach the 2008 Oral Agreement, and (iii) acted without justification. Saville further contends that the Complaint establishes as a matter of law that his actions were taken in furtherance of a legitimate business purpose. The Court concludes that Plaintiffs have failed to adequately allege that Saville acted

without justification and that their tortious interference claim should be dismissed on that basis.[2]

26. Under North Carolina law, a defendant "acts without justification in inducing [a] breach of contract . . . if he has no sufficient lawful reason for his conduct." *Lenders Funding, LLC*, 2018 NCBC LEXIS 67, at *5 (quotation marks omitted) (quoting *Childress v. Abeles*, 240 N.C. 667, 675, 675, 84 S.E.2d 176, 182 (1954)). In that regard, "[i]nterference is without justification if a defendant's motive is not reasonably related to the protection of a legitimate business interest." *Sellers v. Morton*, 191 N.C. App. 75, 81–83, 661 S.E.2d 915, 921–22 (2008). "[C]ompetition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). When a defendant's conduct constitutes justifiable interference, dismissal is appropriate under Rule 12(b)(6). *Id.*

27. Here, Plaintiffs allege only that Saville's "conduct . . . was wrongful [and] was not motivated by a legitimate business purpose or justification." (Compl. ¶ 54.) Nevertheless, Plaintiffs argue that because they allege that Saville knew of Plaintiffs' operations and advertising in the Atlanta DMA and still agreed to acquire the Carrollton Territory from Window World, Saville must have known, or at least should have known, of the substance of the 2008 Oral Agreement and thus knew, or should have known, that his entry into the Carrollton Agreement would cause the 2008 Oral

---

[2] In light of the Court's conclusion, the Court need not address Saville's other grounds for dismissal of this claim.

Agreement to be breached. (*See* Pls.' Br. Opp'n Def. Saville's M. Dismiss 13–14, ECF No. 64.) Plaintiffs' conclusory allegations are insufficient to survive dismissal under Rule 12(b)(6).

28. First, the Court need not accept Plaintiffs' conclusory allegations as true, where, as here, they are unsupported by allegations of fact. *See Good Hope Hosp., Inc.*, 174 N.C. App. at 274, 620 S.E.2d at 880. Moreover, our Supreme Court has held that a plaintiff alleging lack of justification "must allege facts demonstrating that defendants' actions were not prompted by 'legitimate business purposes,'" *Embree Constr. Grp., Inc.*, 330 N.C. at 500, 411 S.E.2d at 926, which the Complaint here fails to achieve.

29. Next, nothing in the Complaint suggests that Saville entered into the Carrollton Agreement for any reason other than to advance his own legitimate business interests. *See, e.g.*, *Peoples Sec. Life Ins. Co.*, 322 N.C. at 221–22, 367 S.E.2d at 650 (affirming dismissal of tortious interference claim where allegations indicated that parties were competitors and actions of defendant were in furtherance of defendant's own interest and by lawful means); *Torres v. Steel Network, Inc.*, 2009 NCBC LEXIS 11, at *5 (N.C. Super. Ct. July 27, 2009) (dismissing tortious interference claim where facts suggested interference was to protect a legitimate business interest). Indeed, according to the Complaint, Saville (i) was offered an opportunity to obtain more territory in Georgia in which to operate, (ii) accepted the

offer, (iii) paid for the territorial expansion,[3] and (iv) entered into the Carrollton Agreement "to benefit him[self] financially." (Compl. ¶¶ 23–24, 59.) Plaintiffs have thus acknowledged that Saville acted in furtherance of his legitimate business interests and do not allege any facts showing that Saville engaged in any conduct in pursuit of those interests by unlawful means.

30. Finally, although Plaintiffs argue that Window World entered into the Carrollton Agreement to punish Plaintiffs for filing the 2015 Window World Lawsuit and thus that the sale to Saville "stem[s] from a malicious purpose," (Pls.' Br. Opp'n Def. Saville's M. Dismiss 14 (citing Compl. ¶¶ 26–27)), Plaintiffs fail to allege that Saville knew of the 2015 Window World Lawsuit, that the existence of that lawsuit had any bearing whatsoever on Saville's decision to enter the Carrollton Agreement, or any facts showing that Saville was aware of, or in any way motivated by, a purported "malicious purpose." While Plaintiffs need not allege "actual malice in the sense of personal hatred, ill will, or spite" to state a claim, *Childress*, 240 N.C. at 675, 84 S.E.2d at 182, Plaintiffs' allegations of Saville's "malicious purpose" here are wholly unsupported by allegations of fact.

31. Accordingly, for the reasons discussed above, Plaintiffs have failed to allege sufficient facts to permit a factfinder to conclude that Saville acted without legal justification in entering the Carrollton Agreement. As a result, Plaintiffs' claim for

---

[3] Plaintiffs do not allege that Saville paid in excess of a normal and customary fee to expand into the Carrollton Territory or otherwise allege facts showing that Saville was complicit in a scheme to harm Plaintiffs' business.

tortious interference with contract against Saville fails as a matter of law and should be dismissed.

C.       Unfair and Deceptive Trade Practices

32.     To successfully state a claim under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. Gen. Stat. § 75-1.1, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593, 619 S.E.2d 577, 582 (2005) (quoting *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991)).  The UDTPA, though broad, is "not intended to apply to all wrongs in a business setting." *Dalton v. Camp*, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001).

33.     "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* at 656, 548 S.E.2d at 711.  In addition, "some type of egregious or aggravating circumstances must be alleged and proved before the [UDTPA's] provisions may [take effect]." *Id.* at 657, 548 S.E.2d at 711 (quoting *Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993)).  The determination as to whether an act is unfair or deceptive is a question of law for the court. *Id.*

34.     Here, Plaintiffs' claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 against Saville is based on the same alleged conduct underlying Plaintiffs' claims for conversion and tortious interference with contract.  (*See* Pls.' Br.

Opp'n Def. Saville's M. Dismiss 17–18.)[4]  Because the Court has concluded that Saville's alleged conduct cannot sustain claims against him for conversion or tortious interference with contract, Plaintiffs' claim for unfair and deceptive trade practices must likewise fail.  *See Krawiec v. Manly*, 370 N.C. 602, 613, 811 S.E.2d 542, 550 (2018) ("Plaintiffs made no further allegations of specific unfair or deceptive acts. Because we determined that plaintiffs failed to state a valid claim for tortious interference with contract or misappropriation of trade secrets, we necessarily must conclude that plaintiffs also failed to adequately allege that . . . defendants 'committed an unfair or deceptive act or practice.'" (quoting *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711)).[5]  Accordingly, the Court concludes that Plaintiffs' Section 75-1.1 should be dismissed.

IV.

CONCLUSION

35.  **WHEREFORE**, for the foregoing reasons, Defendant Andrew Saville's Motion to Dismiss is hereby **GRANTED**, and Plaintiffs' claims against Saville for conversion, tortious interference with contract, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 are hereby dismissed with prejudice.

---

[4] Plaintiffs' counsel also acknowledged at the hearing on the Motion that the alleged conduct supporting Plaintiffs' Section 75-1.1 claim is the same conduct on which Plaintiffs' claims for conversion and tortious interference are based.

[5] In light of the Court's conclusion, the Court elects not to address Saville's preliminary contention that Section 75-1.1 does not reach the Georgia-based conduct alleged in the Complaint and instead assumes, for the purposes of this Motion, that Section 75-1.1 extends to such conduct.

**SO ORDERED**, this the 22nd day of October, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge
